**COUNTRY SHINDIG OPRY, INC., Appellee,**

v.

**CESSNA AIRCRAFT COMPANY, Appellant.**

**Walston Airbusiness, Inc., Teledyne Industries, Inc.**

**No. 84–2427.**

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1985.

Decided Jan. 3, 1986.

Partial Rehearing, Limitation of Mandate and Stay Denied Feb. 10, 1986.

Thomas C. Walsh, St. Louis, Mo., for appellant.

Mark H. Goodrich, Des Moines, Iowa, for appellee.

Before HEANEY and BOWMAN, Circuit Judges, and WANGELIN,* Senior District Judge.

BOWMAN, Circuit Judge.

In November 1981, plaintiff-appellee Country Shindig Opry, Inc. (Country) purchased a new Cessna P–210 aircraft. After experiencing considerable difficulty with the aircraft, Country flew the airplane to the dealer from whom it was purchased and disclaimed any further obligation to make payments. Country thereafter filed this diversity suit against defendant-appellant Cessna Aircraft Company (Cessna) and others, alleging *inter alia*, fraudulent misrepresentation and breach of express and implied warranties. At trial, the District Court submitted only the fraudulent misrepresentation claim to a jury after denying Cessna's motion for a directed verdict.[1] The jury returned a verdict in favor of Country of $114,700 in actual damages and $3 million in punitive damages. Cessna timely moved for judgment n.o.v. and the District Court denied that motion as well. Cessna now appeals from the District Court's entry of judgment on the jury's verdict, asserting as error the District Court's denial of its motion for a directed verdict and the District Court's rulings on certain other matters. We reverse the judgment of the District Court and remand the case for a new trial.

I.

Country produces a family entertainment variety show in a country music format at Lake of the Ozarks in Missouri. Dennis Hilton is the president and sole shareholder of Country. Country first purchased an airplane for its business in 1976 and used the plane primarily to transport "key personnel" to performances "on the road." In November 1981, Country acquired the 1981 model Cessna P–210 aircraft that is the subject of this action from Walston Airbusiness, Inc. (Walston), a Cessna dealer in East Alton, Illinois. Country purchased the 1981 P–210 after a Walston employee crashed Country's 1979 model Cessna P–210 while returning it to Country from Walston's service department.

Country experienced significant problems with the 1981 P–210. A detailed recitation of the poor service record of Country's 1981 P–210 neither would be helpful to our resolution of this case nor a desirable use of many pages of the Federal Reporter. In short, Country's 1981 Cessna was a lemon with wings. The avionics, the fuel system, the pressurization system, and especially the exhaust system required continual repair, as did various other gauges and components on the plane.[2] After sixteen months of trouble, Country flew the aircraft back to Walston and demanded a refund of the purchase price. When Cessna would not agree to this request, Country abandoned the aircraft at Walston's place of business and refused to make any further payments to Cessna Finance Corporation.

In July 1983, Country commenced this lawsuit. Country's complaint contained five counts, including the fraudulent misrepresentation count relevant to this appeal. In its misrepresentation count Country claimed that Cessna

did falsely represent and warrant to [Country], through representations in sales manuals, advertisements, news releases, pilot's operating data and other communications, as follows:

\* \* \* \* \* \*

---

* The HONORABLE H. KENNETH WANGELIN, Senior United States District Judge for the Eastern and Western Districts of Missouri, sitting by designation.

1. For reasons unclear from the record, Country abandoned its warranty claims prior to submission of the case to the jury.

2. Country alleged a breach of implied warranty of merchantability, but as already noted the case was submitted only on Country's fraud claim.

(b) That the AIRCRAFT was capable of safe and dependable flight during conditions of darkness, flight into poor weather (instrument meteorological conditions), and flight into known icing conditions.

\* \* \* \* \* \*

(f) That the AIRCRAFT and the POWER PLANT ... were airworthy, dependable, safe and fit for the transportation of persons by air.[3]

Country sought both actual and punitive damages.

After a lengthy trial, the case was submitted to a jury. The court properly instructed the jury on the elements of fraud under Missouri law and informed the jury that it could return a verdict for Country if it found that Cessna represented either (1) that the 1981 P–210 was "free from defects in material in the exhaust system, intending that [Country] rely upon such representation in purchasing the aircraft" or (2) that it was "safe for flight in bad weather and known icing conditions, intending that [Country] rely upon such representation in purchasing the aircraft ..." The jury returned its verdict for Country.

## II.

The Missouri Supreme Court plainly has set forth the elements of a fraud claim under Missouri law.

The elements of fraud are: 1) a representation, 2) its falsity, 3) its materiality, 4) the speaker's knowledge of its falsity, or his ignorance of its truth, 5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated, 6) the hearer's ignorance of the falsity of the representation, 7) the hearer's reliance on the representation being true, 8) his right to rely thereon, and 9) the hearer's consequent and proximately caused injury.

*Sofka v. Thal,* 662 S.W.2d 502, 506 (Mo. 1983) (en banc). A plaintiff must produce sufficient evidence that logically and convincingly supports each element of his cause of action. See: *Grosser v. Kandel-Iken Builders,* 647 S.W.2d 911, 914 (Mo. App.1983).

In reviewing the record to determine whether there is sufficient evidence of fraud in this case, we are bound by a strict standard of review. The standard for reviewing a ruling on a motion for a directed verdict is the same as that for reviewing a ruling on a motion for judgment n.o.v. *SNCO Barge Lines v. Anderson Clayton & Co.,* 745 F.2d 1188, 1192 (8th Cir.1984). To assess whether a ruling on a motion for a directed verdict was proper, the courts consider the evidence in the light most favorable to the prevailing party, assuming as true all facts that the prevailing party's evidence tended to prove and giving him the benefit of all favorable inferences that reasonably may be drawn from the proven facts. *Brown v. Missouri Pacific Railroad,* 703 F.2d 1050, 1052 (8th Cir.1983). If, in light of the above, reasonable jurors could differ as to the conclusions that could be drawn from the evidence, the court must deny the motion for a directed verdict. *Id.*

### A.

■ Country asserts that the misrepresentations allegedly made by Cessna occurred in a conversation between Dennis Hilton and Cessna's Manager of Customer Services and were contained in service information letters and owner advisories from Cessna, the Pilot's Operating Handbook (POH) for the 1981 P–210, and a Cessna product brochure. Cessna, on the other hand, contends that none of the above sources support Country's fraud theory.[4] We will review each source to deter-

---

**3.** Country's complaint specifically referred to the inability of the vacuum system to support flights in bad weather conditions and the inadequacy of the exhaust system materials for the operating temperatures in the P–210.

**4.** Cessna argues that this action really is nothing more than a "garden-variety breach of warranty case" and that Country should not be able to avoid the provisions of the Uniform Commercial Code (UCC) by labeling this action as one for fraud. We reject this view as applied to the facts of this case. The UCC specifically states

**1412**

mine whether it contains a misrepresentation sufficient to sustain the jury verdict.[5]

■ Our review of Hilton's testimony fails to reveal any representations whatsoever that were made by Joseph Quackenbush, Cessna's Manager of Customer Services, when Hilton called to complain about exhaust system cracks in Country's 1981 P–210. In fact, Hilton stated that Quackenbush simply referred him to the service department of his Cessna dealer. Even had a potentially fraudulent statement been made during that conversation, however, it could not support the jury verdict in this case. The jury was instructed that it could return its verdict for Country only if a representation was made to Country intending that Country rely on that representation in *purchasing* the aircraft. Since Hilton's conversation with Quackenbush occurred after the purchase of the aircraft, it cannot be the source of any misrepresentation that would validate the jury's verdict.

■ Likewise, our review of the Cessna service information letters and owners advisories cited by Country as containing misrepresentations does not reveal anything that would support the verdict here. These materials relate solely to Country's 1979 P–210 and made no representation concerning the 1981 model P–210. In addition, Country has not referred us to any place in the record, nor have we found any place, that indicates that Hilton or anyone else acting on behalf of Country relied on any representation in these materials from Cessna in purchasing the 1981 aircraft. Reliance on an alleged misrepresentation is an essential element of Country's fraud claim and the verdict could not stand even

on the basis of misrepresentations in these service letters and owner advisories absent testimony logically and convincingly showing Country's reliance on those representations. *Sofka,* 662 S.W.2d at 506.

■ For similar reasons, the POH also cannot sustain the fraud verdict here. Country pleaded in its complaint that representations that the aircraft was safe and dependable were made and that these representations were false because the exhaust system was not adequate to accommodate the P–210's operating temperatures. Country's expert, Jerry Lee Hall, testified that Cessna's own test information revealed that operation of the aircraft according to the POH would result in operating temperatures that exceeded the engine manufacturer's limitations. While Cessna witnesses testified that this could not occur, the jury could have resolved any conflict in this evidence by accepting Hall's opinion. *See Brown,* 703 F.2d at 1052. We nevertheless cannot accept this or any other representation made in the POH as adequately supporting the jury verdict for the same reason that any representations in Cessna's service letters or owner advisories cannot support the verdict. Hilton never testified that he relied on the information in the POH in purchasing the aircraft.[6]

■ Country, however, argues that Missouri law also allows recovery for concealment of material facts that a party has a duty to disclose. *See Curtis v. Kays,* 670 S.W.2d 887, 893 (Mo.App.1984). Country claims that Cessna concealed material facts and that it continued to conceal the earlier misrepresentations that Country asserts

that "the principles of law and equity, including … the law relative to … fraud [and] misrepresentation" shall supplement the provisions of the UCC. R.S.Mo. § 400.1–103. We believe that Country had the option of electing to proceed under a fraudulent misrepresentation theory and find no error on the part of the District Court in permitting that election.

**5.** We note that jury instruction number five refers to the plaintiff's claim for damages resulting from "defendant Cessna Aircraft Company's fraudulent misrepresentations." We doubt that

the language in this instruction is appropriate. By referring to the defendant's "fraudulent misrepresentation," the instruction creates potential jury confusion because the jury might believe that the court already had determined that there was a fraudulent misrepresentation.

**6.** The product brochure refers the reader to the POH "for complete operations information." This reference in the product brochure is insufficient to indicate that Hilton relied on the POH although he testified that he relied on the product brochure.

were made. These theories were pled in Country's complaint and the evidence at trial may have supported a jury verdict on the basis of these theories. The jury, however, was not instructed on a concealment theory and such a theory therefore may not provide the basis for upholding the jury verdict.

■ Finally, Country points to the Cessna product brochure as the source of the misrepresentations that the jury based its verdict upon. The product brochure contains two representations that are relevant to this case: (1) that "you can have [a 1981 P–210] certified for flight into icing" and (2) that "[a]n Alcor combustion analyzer not only monitors individual cylinder exhaust temperature to spot potential problems before they occur, but also enable [sic] EGT [Exhaust Gas Temperature] adjustment for peak efficiency." The first representation was true and the second representation cannot provide a basis for the fraud verdict consistent with the jury instructions. The 1981 P–210 could be certified for flight into icing conditions and in fact Country's aircraft was so certified. That Cessna may have known of the problems with the de-icing equipment at the time Country purchased its aircraft does not alter this conclusion. While Cessna may have made fraudulent statements in regard to the deicing equipment elsewhere, the statement in the product brochure that the aircraft could be certified for flight into icing conditions was true. The second representation concerning the exhaust system does not refer to the materials used in that system or to the system's overall adequacy for the P–210. Country is not complaining about the performance of the combustion analyzer; the jury instruction refers only to the materials in the exhaust system. We do not believe that the representation in the product brochure is broad enough to be construed as including a reference to the materials of which the exhaust system is constructed. While Hilton did testify that he relied on the product brochure, we are unable to locate any representation

that would justify upholding the jury verdict.

The case was submitted to the jury on fraudulent inducement theories and were the representations discussed above the only representations that we could ascertain, we would be forced simply to reverse the District Court's entry of judgment on the jury verdict. One other representation appears from the record, however, and we discuss it below.

**B.**

■ Robert Terry, a former corporate officer for Country who was involved in the purchase of the 1981 P–210, testified that "the most significant [representation] was trying to convince us that the problems that we had with the [1979 P–210] had all been rectified by Cessna and that the '81 airplane would be a much better airplane free of the problems that we had had previously." The 1979 model P–210 that Country owned experienced substantial problems involving the materials in the exhaust system just as did the 1981 model. We are satisfied that this statement is a sufficient basis to support the jury's verdict in this case. Giving Country the benefit of all favorable inferences that may be drawn from the above representation, we believe that the jury reasonably could have determined that a misrepresentation concerning the material in the exhaust system had been made and that Country had relied on the misrepresentation.

Using this representation as the basis for the jury verdict, however, raises another problem. The representation was made to Terry by employees of Walston. Cessna asserts that the District Court committed reversible error by not submitting the issue of agency to the jury. We agree.

■ Although Country contends that the issue of agency was not relevant after it withdrew its express warranty claims, the statements here clearly were made by Walston employees.[7] Absent a principal-

---

7. We note also that the District Court gave no    instruction withdrawing from the jury the rep-

agent relationship between Cessna and Walston, the statements were merely hearsay and thus not properly admissible against Cessna. Missouri law provides that the existence of an agency relationship is a question of fact to be determined by the trier of fact. *Molasky Enterprises, Inc. v. Carps, Inc.,* 615 S.W.2d 83, 89 (Mo.App.1981); *Smoot v. Marks,* 564 S.W.2d 231, 236 (Mo.App.1978). Because the failure of the District Court to give an agency instruction was reversible error, see *Wired Music, Inc. v. O'Brien,* 556 S.W.2d 459, 462 (Mo.App.1977), we reverse the judgment of the District Court and remand the case for a new trial.

resentations made by Walston employees which evidently were admitted in regard to the breach of express warranties counts of the complaint.