Alice **HUGHES** and **David Hughes,**
d/b/a **United Auto Sales,**
Appellees,

v.

Fred **BOX** d/b/a **Regency**
**Vans, Appellant,**

Gene **Wilson,** d/b/a **Regency Vans,**
**Joseph E. Hammett,** d/b/a
**Regency Vans, Appellant.**

Alice **HUGHES** and **David Hughes,**
d/b/a **United Auto Sales,**
Appellants,

v.

Fred **BOX** d/b/a **Regency**
**Vans, Appellee,**

Gene **Wilson,** d/b/a **Regency Vans,**
**Joseph E. Hammett,** d/b/a
**Regency Vans, Appellee.**

Nos. 86–1136, 86–1310.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 14, 1986.
Decided March 12, 1987.

Warren H. Sapp, Kansas City, Mo., for appellant.

Bernard E. Brown, Kansas City, Mo., for appellees.

Before McMILLIAN, ARNOLD, and WOLLMAN, Circuit Judges.

WOLLMAN, Circuit Judge.

Plaintiffs, Alice and David Hughes, doing business as United Auto Sales, brought suit against Fred Box and Joseph Ham-

mett[1] for violations of Subchapter IV of the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. §§ 1981–91 (1982), and for common law fraud. Plaintiffs alleged that the conversion van that they purchased from an auto auction in Denver, Colorado, was falsely represented to them as having traveled 31,395 miles when in fact the actual mileage was at least 131,395 miles. They further alleged that defendants sold the vehicle to plaintiffs' transferor under the same misrepresentation.

After a jury trial, the district court[2] entered judgment against defendant Hammett for $8,000 in actual damages on the common law fraud claim, $75,000 in punitive damages, and $2,392 in monetary sanctions for failure to provide discovery. Judgment was also entered against defendant Box for $21,000 in treble damages and $5,949.88 in attorney fees under the federal odometer statute.

Although defendants raise a number of issues on appeal, we find that only three necessitate extended discussion: (1) whether defendants fully complied with the disclosure requirements of the federal odometer statute; (2) whether the amount of actual damages assessed by the jury was improper; and (3) whether the punitive damages assessed against defendant Hammett was so excessive as to reflect bias, passion, or prejudice on the part of the jury. We affirm.

To best understand this case, it is helpful to trace the chain of title of the van in question. The vehicle, a 1980 Ford Econoline van, was originally owned by National Car Rental and then sold to Metro Auto Auction (Metro) for $2,517. Metro later sold the vehicle to Regency Vans[3] (Regency) in September 1983 with documentation that the van had 129,497 miles on it. Regency subsequently transferred the vehicle to B & B Enterprises (B & B), a Missouri automobile dealership; approximately two weeks later, the van was transferred from B & B back to Regency.

Sometime between the time Regency first received the van and the time when the title was transferred back to Regency from B & B, the vehicle, which had originally been titled in Illinois, became titled in Oklahoma, and the mileage on the title was altered to read 29,497 miles. It appears that a title-laundering process was employed whereby a carefully placed notary stamp was used to obliterate the fact that the mileage exceeded 100,000, and the typewritten "129,000" on the Illinois title was changed and a handwritten "29,497 miles" was put in its place.

After receiving the title back from B & B, Regency transferred the van to Colorado Auto Auction (CAA) in November 1983. The mileage was represented as being 29,497. That same month, CAA sold the vehicle to plaintiffs at an auction for $8,025. At that time, plaintiffs received a sales invoice incorporating a federal odometer mileage statement certifying that the actual mileage on the vehicle was 31,395 miles.

Since CAA did not have title to the van at the time of the auction, it notified Regency that the van had been sold and requested the title. Defendant Hammett signed the title in the name of defendant Fred Box, the owner of Regency, and supposedly forwarded it with an odometer statement showing the miles on the van to be over 100,000. CAA received the title— and presumably the odometer statement— and forwarded the title to plaintiffs' bank. Apparently, CAA did not include along with the title the odometer statement indicating that the van's mileage exceeded 100,000 miles. Consequently, besides the sales invoice, the only other document that plaintiffs received from CAA that showed the van's mileage was the title, which false-

---

**1.** Although Gene Wilson was originally listed as a defendant in this case, he was not a participant in the trial and is not a participant in this appeal.

**2.** The Honorable D. Brook Bartlett, United States District Judge for the Western District of Missouri.

**3.** At trial the jury found defendants to be operators and/or partners of the enterprise known as Regency Vans. We conclude that this finding was sufficiently supported by the evidence presented at trial.

ly indicated the van's mileage to be 29,497 only a month before the purchase and which further showed a certification on the assignment of title that the van's mileage was 31,395 miles at the time of purchase.

## I.

Defendants first contend that the district court erred in denying their motions for directed verdict and in failing to sustain their motions for judgment notwithstanding the verdict because the facts presented at trial conclusively established that they had complied with the federal odometer statute.[4]

The standard of review applied in reviewing a ruling on a motion for judgment n.o.v. is the same as that used in reviewing a decision on a motion for directed verdict. *Country Shindig Opry, Inc. v. Cessna Aircraft Co.*, 780 F.2d 1408, 1411 (8th Cir. 1986). *Hinkle v. Christensen*, 733 F.2d 74, 77 (8th Cir.1984). An appellate court must:

> consider the evidence in the light most favorable to the prevailing party, assuming as true all facts that the prevailing party's evidence tended to prove and giving him the benefit of all favorable inferences that reasonably may be drawn from the proven facts. If, in light of the above, reasonable jurors could differ as to the conclusions that could be drawn from the evidence, the court must deny the motion for a directed verdict.

*Country Shindig*, 780 F.2d at 1411 (citation omitted). Applying this standard, we find that the district court did not err in denying defendants' motions for directed verdict and judgment n.o.v.

Under Subchapter IV of the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. §§ 1981–91 (1982), the following disclosure must be made upon transferring ownership of a motor vehicle: "(1) Disclosure of the cumulative mileage registered on the odometer. (2) Disclosure that the actual mileage is unknown, if the odometer reading is known to the transferor to be

different from the number of miles the vehicle has actually traveled." 15 U.S.C. § 1988(a) (1982). Moreover, the statute provides that "[n]o transferor shall violate any rule prescribed under this section or give a false statement to a transferee in making any disclosure required by such rule." 15 U.S.C. § 1988(b) (1982).

The Act was passed by Congress to protect purchasers of motor vehicles by entitling them to rely on representations made regarding a vehicle's mileage. 15 U.S.C. § 1981 (1982). Such information allows a purchaser of a motor vehicle to make a more informed decision as to a vehicle's value, safety, and reliability. *Id. Ryan v. Edwards*, 592 F.2d 756, 760 (4th Cir.1979). Given the fact that the statute is remedial legislation, it "should be broadly construed to effectuate its purpose." *Ryan*, 592 F.2d at 760.

The thrust of defendants' argument is that they complied with the letter and the spirit of the statute, even though their initial representation to CAA concerning the van's mileage was incorrect. Defendants point to the fact that prior to the transfer of title by CAA to plaintiffs, Regency sent CAA a second odometer statement revealing that the van had over 100,000 miles on it. Relying on *Tusa v. Omaha Auto Auction, Inc.*, 712 F.2d 1248, 1253–54 (8th Cir.1983), they assert that CAA was at fault for not forwarding the second mileage statement to plaintiffs and for failing to establish a system that would detect defendants' initial misrepresentation of the van's mileage.

We find this case to be analogous to *Ryan v. Edwards*, 592 F.2d 756 (4th Cir. 1979), wherein the transferor, Edwards, placed an advertisement in a newspaper describing the automobile for sale as a "low mileage" vehicle. Ryan, responding to the advertisement, met with Edwards and was told by him that the vehicle's actual mileage was roughly 32,000 miles. Edwards also showed Ryan an odometer

---

**4.** Only Box had judgment entered against him on the federal odometer claim; Hammett was held liable under Missouri common law fraud. On appeal, however, the parties have chosen to focus only on whether the requirements of the federal statute were met. Accordingly, we will limit our discussion to an analysis of the federal statute as applied to the facts at hand.

mileage statement incorrectly stating the vehicle's mileage. Ryan paid for and took possession of the vehicle. Several days later, Ryan received the title certificate to the car revealing that the vehicle had actually traveled 110,020 miles.

The trial court ruled that § 1988(b) did not apply to the newspaper advertisement or to Edwards' oral statements and entered a judgment n.o.v. in Edwards' favor. The Fourth Circuit reversed the trial court's ruling and reinstated the verdict, stating: "A transferor cannot insulate himself from liability under the statute by completing the odometer mileage statement correctly, and then contradicting that statement with false oral claims." *Id.* at 761.

■ The lesson of *Ryan* is that a transferor of a motor vehicle cannot blow both hot and cold with respect to a vehicle's actual mileage and then reasonably expect his actions to amount to compliance with the statute. Given the broad purpose of the Act to protect motor vehicle purchasers from inaccurate mileage representations by sellers, a transferor should, at the very least, have some duty to specifically and unambiguously alert the transferee to the fact that the transferor's initial representation of the vehicle's mileage was incorrect, and to make clear the vehicle's actual mileage. This defendants failed to do.

■ Defendants make much of the fact that CAA failed to send the second odometer statement to plaintiffs. We note, however, that CAA is not a party to this lawsuit, and our concern is not with CAA's potential liability to plaintiffs. Moreover, even if CAA had forwarded to plaintiffs all the paperwork that defendants claim they sent to CAA, plaintiffs still would not have been sufficiently informed of the van's correct mileage. No one disputes that the original information defendants provided as to the vehicle's mileage was incorrect. Once defendants discovered that their initial representation was mistaken, they should have specifically pointed this out to CAA as soon as possible. Instead, Hammett allegedly forwarded the correct odometer statement to CAA without acknowledging that the mileage on the statement

was materially different from what it was initially represented to be. Moreover, the title accompanying the statement incorrectly represented the van's mileage as being less than 100,000 miles. The contradictory nature of the documents, along with Regency's initial misrepresentation of the vehicle's actual mileage, can hardly be characterized as the type of disclosure contemplated by the Act. Accordingly, we conclude that there was sufficient evidence presented at trial for the jury to conclude that defendants had violated the Act.

## II.

Defendants next contend that the actual damage award was improper. First, they allege that the actual damage instruction was fatally flawed. The pertinent jury instruction reads as follows:

> If you find in favor of the plaintiffs * * * then you must award plaintiffs such sum as you believe was the difference between the actual value of the Ford van on the date it was sold to plaintiffs and what its value would have been on that date had the Ford van been as represented by Regency Vans. In addition, you must award plaintiffs such sum as you believe will fairly and justly compensate plaintiffs for any other damages you believe they sustained as a direct result of the defendant * * * for which you find the defendant liable.

Defendants argue that the evidence was insufficient to submit the latter sentence of the instruction to the jury. Our review of the record, however, reveals that this point was not sufficiently preserved at trial. Rule 51 of the Federal Rules of Civil Procedure states: "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." The rule requires the objection to be made with the necessary degree of specificity " 'to bring into focus the precise nature of the alleged error.' " *Wilson v. Crouse-Hinds Co.*, 556 F.2d 870, 875 (8th Cir.), *cert. denied*, 434 U.S. 968, 98 S.Ct. 513, 54 L.Ed.2d

455 (1977) (quoting *Palmer v. Hoffman*, 318 U.S. 109, 119, 63 S.Ct. 477, 483, 87 L.Ed. 645 (1943)).

When asked at trial whether they had any objection to the instruction on actual damages, defendants' only reply was the submission of an alternative instruction essentially similar to the above instruction except for the fact that the second sentence was omitted. Defendants never explained the basis of their objection to the instruction ultimately given. Merely tendering an alternative instruction is insufficient to preserve the error for appeal. *Johnson v. Houser*, 704 F.2d 1049, 1051 (8th Cir.1983) (per curiam). A party wishing to challenge an instruction must point to some specific error in the instruction and state why the instruction is improper. *Id.* The basis of a party's objection should not be first learned on appeal or during a party's post-trial motion. Accordingly, we hold that the issue of the propriety of the actual damage instruction was not preserved for appeal. In addition, we find the plain-error exception to Rule 51 to be inapplicable here because the alleged error did not seriously affect "the fairness, integrity or public reputation of judicial proceedings." *Id.* at 1052. *Thomas v. Booker*, 784 F.2d 299, 304 (8th Cir.1986) (en banc). *See also Johnson v. Ashby*, 808 F.2d 676, 679 n. 3 (8th Cir.1987) (especially in civil litigation, plain-error exception limited to only "the most compelling cases").

Defendants also argue that the actual damage award was improper because it was outside the range of damages established by the evidence. Under federal law, the issue of the excessiveness of a verdict is to be reviewed "only in those rare instances where we are pressed to conclude that there is a plain injustice, or a monstrous or shocking result." *Hollins v. Powell*, 773 F.2d 191, 197 (8th Cir.1985). Under Missouri law, "if an award of damages is within the range of evidence, the jury's verdict may be responsive to the issue of damages even though it does not find an amount precisely in accordance with the claim of either of the parties."

*Cotner v. Blinne*, 623 S.W.2d 615, 619–20 (Mo.Ct.App.1981).

We find that the jury's verdict is within the range of evidence produced at trial and does not amount to a "plain injustice" or a "shocking result." First, we find that there was a basis for the $8,000 figure assessed against Hammett on the Missouri common law fraud claim. Plaintiffs paid $8,025 for the van. David Hughes II testified that the van was worth up to $3,000 with a title. However, when plaintiffs submitted the Oklahoma title to Kansas officials to obtain a Kansas title, the Kansas Department of Revenue seized the title and refused to issue any new title. Without title to the van, plaintiffs were prevented from selling the van as they had intended, further reducing the van's value. There was also testimony that there were several problems with the vehicle that necessitated repairs. Finally, plaintiffs spent 400 to 500 hours of their time—including two trips to Denver—in an attempt to peacefully resolve the problems arising from the fraudulent transaction. Based on the foregoing, the jury could have reasonably concluded that plaintiffs suffered at least $8,000 in actual damages as a consequence of Hammett's actions.

Likewise, in the light of the above-mentioned evidence we find that there was a rational basis for the $7,000 verdict and judgment entered against defendant Box. Any inconsistencies in the amounts entered against Hammett and Box are to be attributed more to the less-than-ideal jury instructions than to any irrational or arbitrary decision by the jury. Also, we find no evidence of bias or prejudice by the jury in its assessment of actual damages. Accordingly, we uphold the jury's assessment of actual damages against both defendants.

### III.

Defendant Hammett also avers that the punitive damages assessed against him under the Missouri common law fraud claim were so excessive as to reflect bias, passion, or prejudice by the jury.

Under Missouri law the amount of punitive damages awarded is within the discre-

**504**

tion of the jury, *Boquist v. Montgomery Ward & Co.*, 516 S.W.2d 769, 776 (Mo.Ct. App.1974), and only in extreme circumstances will a court interfere, *Hupp v. North Hills Lincoln-Mercury, Inc.*, 610 S.W.2d 349, 357 (Mo.Ct.App.1980). While there must be a reasonable relationship between the actual injury to the plaintiff and the amount of punitive damages, *Ogilvie v. Fotomat Corp.*, 641 F.2d 581, 586 (8th Cir.1981), Missouri courts have not established any fixed numerical relationship between the amount of actual (nominal) damages and the amount of punitive damages awarded. *Labrier v. Anheuser Ford, Inc.*, 621 S.W.2d 51, 58 (Mo.1981) (en banc).

■ Hammett argues that the amount of punitive damages is excessive with regard to the amount of actual damages assessed against him. Granted that there may be an extreme instance in which a jury's determination as to punitive damages should be overturned, this is not that case. True, the punitive damage award was more than nine times greater than the actual damage award ($75,000 to $8,000), but in view of the fact that a $75,000 punitive damage award has been upheld in the face of a one dollar award for nominal damages, *Holcroft v. Missouri-Kansas-Texas R.R.*, 607 S.W.2d 158, 163–65 (Mo.Ct.App.1980), we cannot say that the punitive damage award in this case was excessive.

Hammett further argues that the imposition of punitive damages amounting to fifteen percent of his net worth is excessive. We do not find in the decisions he cites, however, an instance in which a Missouri court has laid down a hard-and-fast rule regarding the percentage of a defendant's net worth that a punitive damage award must reflect in order to justify setting aside the verdict. We are thus loath to overturn the punitive damage award on this basis.

■ Hammett contends that the punitive damage award was excessive when measured against his role in plaintiffs' loss or injury. We find, though, that there is sufficient evidence demonstrating that Hammett was a key figure in the fraudulent sale of the van and, therefore, directly involved with the loss plaintiffs experienced. Hammett acted and was regarded as the owner and person in charge of Regency by both CAA and Box. Hammett acknowledged handling most of the paperwork for Regency. In fact, it was Hammett who signed Box's name to the assignment of title from Regency to CAA and who passed the title showing the incorrect mileage on the van. Plaintiffs also dealt with Hammett over the telephone on a number of occasions in an attempt to resolve the problem. It was during these conversations that Hammett more than once falsely stated that the mileage on the van was correct. Accordingly, we conclude that the evidence supports the jury's award of punitive damages against Hammett.

Defendants have raised several other issues, but since they were not preserved for appeal we need not address them. *See Johnson v. Houser,* 704 F.2d at 1051–52. Because we affirm the district court's judgment against defendants, we also need not reach plaintiffs' cross-appeal.

The judgment is affirmed.