**Albert R. FRANCESCONI, Plaintiff,**

v.

**KARDON CHEVROLET,
INC., Defendant.**

Civ. No. 87–4203 (CSF).

United States District Court,
D. New Jersey.

Dec. 27, 1988.

Scaramella & Hoofnagle by Michael S. Scaramella, Cherry Hill, N.J., for plaintiff.

Robert P. Clark, Manasquan, N.J., for defendant.

### OPINION

CLARKSON S. FISHER, District Judge.

This action was instituted by plaintiff, Albert R. Francesconi, who alleges that he was injured as a result of certain fraudulent conduct by the defendant during the negotiation of a lease for a 1985 Isuzu Impulse automobile (the "Isuzu"). The complaint alleges two separate grounds for relief. The first count alleges that the defendant, Kardon Chevrolet, Inc., failed to comply with the odometer tampering and disclosure requirements of the Motor Vehicle Information and Cost Savings Act of 1972 (the "Odometer Act"), 15 U.S.C. §§ 1981 *et seq.* The second count alleges a violation of the New Jersey Consumer Fraud Act. The matter is now before the court on defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The facts which underlie this dispute are as follows. Defendant is an automobile dealership located at Route 38, Mount Holly, New Jersey. On October 10, 1985, defendant, acting as a leasing agent for the General Motors Acceptance Corporation ("GMAC"),[1] entered into an agreement with plaintiff for the lease of a 1985 Isuzu Impulse. The vehicle's odometer registered approximately 317 miles. During the transaction, plaintiff was given and signed an odometer mileage statement which represented the mileage on the Isuzu to be 317 miles. No allegation is made that the odometer was tampered with or that it did not accurately register the true mileage on the car.

Plaintiff does allege, however, that during the negotiations, defendant, through its agents, orally represented the mileage on the Isuzu to be only 31.8 miles. Plaintiff further alleges that the defendant made these false representations with the intent to defraud plaintiff and that plaintiff relied on defendant's representations in executing the lease agreement. According to plaintiff, despite having commented on the mileage (that it was, in fact, 318 miles) during a test drive of the Isuzu and having signed the odometer mileage statement at the dealership, he did not become aware that the actual mileage on the car was 317 miles until he came across the statement while reviewing the lease documents at home

1. At the time of the negotiation and execution of the lease agreement, defendant was the owner of the vehicle in question; however, transfer of the ownership of the Isuzu from the defendant to GMAC was done simultaneously with the execution of the lease.

that evening.[2] After this discovery, plaintiff attempted to return the Isuzu, but defendant refused to accept the vehicle.

Shortly thereafter, GMAC, the owner and lessor of the Isuzu, agreed to a recision of the lease agreement and took possession of the vehicle without demanding any payments from plaintiff. It is an undisputed fact that plaintiff was not required to make any payments under the lease agreement. Nevertheless, plaintiff filed this lawsuit against the defendant, alleging a violation of 15 U.S.C. §§ 1981 *et seq.* (the federal odometer statute), as well as the New Jersey Consumer Fraud Act. As damages, plaintiff alleges a loss of income for one-half day amounting to $250.00, and $1,350.00 in legal fees incurred during the dispute with GMAC over the return of the Isuzu.

Plaintiff does not contend that the odometer in the Isuzu was tampered with in any way or that the odometer registered an inaccurate amount of mileage for this car; instead, plaintiff bases his claims on the oral misrepresentations which, he alleges, were made to him during the negotiation of the lease agreement. Defendant moves the court to dismiss the complaint on summary judgment based on its assertion that these facts do not support a claim based on a violation of the federal odometer statute, since a required element—odometer tampering—is not present and because the minor difference in the mileage belies any intent to defraud, another essential element. Plaintiff argues, however, that a finding of odometer tampering is not essential; instead, under plaintiff's analysis of the case law interpreting 15 U.S.C. §§ 1981 *et seq.*, oral misrepresentations are sufficient for the imposition of civil liability. Moreover, plaintiff argues that "intent to

defraud" is a question of fact, which must be resolved by the trier of fact, thus precluding summary judgment.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56; *Brown v. Hilton*, 492 F.Supp. 771, 774 (D.N.J.1980). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *Goodman v. Meade Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). This "burden ... may be discharged by 'showing ... that there is an absence of evidence to support the nonmoving party's case.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Nonetheless, in deciding a motion for summary judgment, the facts and inferences therefrom are construed in a light most favorable to the nonmoving party. *Pollock v. American Telephone & Telegraph Long Lines*, 794 F.2d 860, 864 (3d Cir.1986).

### The Federal Odometer Act

This case presents a novel question of law for the court. The dispositive issue—whether the Odometer Act imposes civil liability on the lessor of a motor vehicle based on oral misstatements concerning the mileage on that automobile when there is no evidence that the vehicle's odometer has been tampered with or is inaccurate in the number of miles registered—has never been addressed by this court.[3] After a thorough examination of the congressional purpose in enacting the Odometer Act, its language and the relevant case law inter-

---

**2.** In paragraph eight of the complaint, plaintiff alleges that the defendant gave to plaintiff "an incomplete odometer mileage statement which failed to disclose the actual mileage registered on the vehicle's odometer." The court finds this allegation particularly perplexing in light of plaintiff's deposition testimony, which clearly shows that it was the information contained in this statement which alerted plaintiff to the fact that the mileage on the Isuzu was not 31.8 miles. *See* Exh. C to the Clark Aff. More importantly, plaintiff does not contest the validity

of the odometer mileage statement, submitted as Exh. D–1 to the Clark Aff., which clearly represents the mileage on the Isuzu to be 317 miles and is, in fact, signed by the plaintiff. Plaintiff also does not assert that a question of fact exists with regard to the issue of the completeness of the statement at the time of signing.

**3.** The parties have cited no case law nor has the court uncovered any which addresses this specific issue.

preting the scope of the statute, the court concludes that it does not.

The intent of Congress in enacting the federal Odometer Act clearly was to prohibit tampering with the odometers of motor vehicles and to provide safeguards for the protection of consumers purchasing motor vehicles. *Clayton v. McCary*, 426 F.Supp. 248, 255 (D.Ohio 1976). This two-fold purpose was expressly set forth in the first section of subchapter IV of the Motor Vehicle Information and Cost Savings Act which provides, in relevant part:

The Congress hereby finds that purchasers, when buying motor vehicles, rely heavily on the odometer reading as an accurate reflection of the mileage actually traveled by the vehicle; ... *It is therefore the purpose of this subchapter to prohibit tampering with odometers on motor vehicles and to establish certain safeguards for the protection of purchasers with respect to the sale of motor vehicles having altered or changed odometers.*

15 U.S.C. § 1981 (1982) (emphasis added).

To that end, Congress promulgated several sections which explicitly prohibit tampering with odometers,[4] and in addition, imposed certain disclosure requirements on the "transferor" of a motor vehicle. Those sections which deal specifically with the act of tampering or changing the amount of mileage are not pertinent to the disposition of this action. Plaintiff has never asserted that the odometer in the Isuzu was tampered with either during defendant's ownership or prior thereto. Defendant argues, however, that these provisions indicate that Congress intended that some form of tampering be present before a violation can occur. In light of the disclosure require-

ments set forth later in the Act, the court finds defendant's reading of the statute to be too narrow.

■ Section 1988(a) of the Odometer Act requires that the following disclosures be made when ownership of a motor vehicle is transferred:

(1) Disclosure of the cumulative mileage registered on the odometer.

(2) Disclosure that the actual mileage is unknown, if the odometer reading is known to the transferor to be different from the number of miles actually traveled.

In addition, section 1988(b) provides:

No transferor shall violate any rule prescribed under this section or give a false statement to a transferee in making any disclosure required by such rule.

15 U.S.C. § 1988. Before reaching the question of whether liability is incurred under this section when oral misrepresentations are made about the mileage on a motor vehicle, regardless of the accuracy of the odometer reading, the court must first resolve the threshold issue of whether the above disclosure requirements are applicable when a lease, rather than a transfer of ownership, is executed.

The only court to address whether the lease of a motor vehicle constitutes a "transfer of ownership of a motor vehicle" within the meaning of the Motor Vehicle Information and Cost Savings Act concluded that it did not. *See C & S Nat'l Bank of Savannah v. Gilliam*, 285 S.C. 313, 329 S.E.2d 3 (S.C.App.1985). This court is inclined to agree. While the legislative history of the Act sheds little light on this issue,[5] the language of the statute casts

---

**4.** 15 U.S.C. § 1983 provides:

No person shall advertise for sale, sell, use, or install, or cause to be installed, any device which causes an odometer to register any mileage other than the true mileage driven. For the purposes of this section, the true mileage driven is that mileage driven by the vehicle as registered by the odometer within the manufacturer's designed tolerance.

15 U.S.C. § 1984 provides:

No person shall disconnect, reset, or alter or cause to be disconnected, reset, or altered, the odometer of any motor vehicle with intent

to change the number of miles indicated thereon.

15 U.S.C. § 1985 provides:

No person shall, with intent to defraud, operate a motor vehicle on any street or highway knowing that the odometer of such vehicle is disconnected or nonfunctional.

**5.** The court notes, however, that in describing the law and its purpose, the legislature repeatedly uses the terms "purchase", "purchaser", "sale" and "seller" throughout its reports. *See, e.g.,* S.Rep. No. 47, 99th Cong., 2nd Sess. 1, *reprinted*

serious doubt on the applicability of these provisions to lease arrangements.

The Act defines the term transfer to mean a "change of ownership by purchase, gift or any other means." 15 U.S.C. § 1982. In addition, the Code of Federal Regulations defines the terms "transferor" and "transferee" as follows:

"Transferor" means any person who *transfers his ownership* in a motor vehicle by sale, gift, or any means other than by creation of a security interest. "Transferee" means any person *to whom the ownership in a motor vehicle is transferred* by purchase, gift, or any means other than by creation of a security interest.

49 C.F.R. § 580.3 (1987) (emphasis added).

It is clear from the language of the statute that the Act contemplates the transfer of legal ownership from one person to another. At the time the lease agreement was entered into, the defendant was the legal owner of the Isuzu. A "change of ownership" did occur simultaneously with the execution of the lease agreement; however, ownership was transferred not to plaintiff, but to GMAC. Plaintiff had the right to possession and use of the vehicle pursuant to the lease agreement, but legal ownership remained in GMAC.

The later amendments to 15 U.S.C. § 1988, which address the subject of lease agreements, lend further support to a finding that the Odometer Act does not impose disclosure requirements on lease transactions. Subsection (e)(1) of 15 U.S.C. § 1988 provides:

In the case of any leased motor vehicle, the rules under subsection (a) of this section shall require written disclosure regarding mileage to be made by the lessee to the lessor *upon the lessor's transfer of ownership of the leased motor vehicle.*

*in* 1986 U.S.Code Cong. & Admin.News 5620. (Current law requires that a written statement disclosing the odometer reading must be provided to the "purchaser" when a vehicle is "sold".)

**6.** The court assumes that plaintiff has withdrawn his allegation that defendant gave him a mileage statement which did not accurately

(Emphasis added.) Subsection (e)(4) of 15 U.S.C. § 1988 further provides:

For purposes of this section, if the lessor *transfers ownership* of any leased motor vehicle without obtaining possession of such vehicle, the lessor may, in making the disclosure required by subsection (a) of this section, indicate on the title the mileage disclosed by the lessee under paragraph (1) unless the lessor has reason to think that such disclosure by the lessee does not reflect the actual mileage of the vehicle.

(Emphasis added.) Both sections focus only on the transfer of ownership of a motor vehicle subsequent to the expiration of a lease term and require disclosure of the mileage on the vehicle only at that time. In contrast, the statute does not state that this disclosure must similarly be made at the commencement of a lease. The court, thus, concludes that the Odometer Act requires a transfer of the legal ownership of a vehicle before its disclosure requirements are triggered.

Even if the court were to assume, however, that the disclosure requirements in the Odometer Act apply equally to lease transactions, under the facts presented, plaintiff would remain unable to prevail on a claim which is based on a violation of this statute. Although the court is unwilling to adopt defendant's contention that tampering must be shown in order to prevail, to permit a recovery based only on allegations of false oral representations, in the face of evidence which clearly shows that the odometer reading of the vehicle reflected its true mileage and that the lessee was given an accurate odometer mileage statement,[6] would require the court to go beyond the reach of the statute.

■ The Odometer Act contemplates some change in the odometer before civil liability based on nondisclosure can be im-

state the true mileage on the Isuzu. The only ground upon which plaintiff appears to contest the validity of the odometer mileage statement is that the statement is missing the required certifications. *See* Pl. Brief in Opposition to Summary Judgment, p. 1.

posed. Congress, when enacting the federal odometer statute, recognized that consumers rely heavily on an automobile's odometer reading in deciding issues of value, reliability and safety. 15 U.S.C. § 1981; *Ryan v. Edwards*, 592 F.2d 756, 760 (4th Cir.1979). To accomplish the goal of ensuring that the purchaser of an automobile obtains accurate information regarding the number of miles traveled by the vehicle, Congress first expressly prohibited and imposed liability for tampering with odometers. 15 U.S.C. §§ 1983–84 and 1989.[7]

A change in an odometer which causes it to register an inaccurate amount of mileage can occur, however, even in the absence of tampering. For example, a defective or replaced odometer will not reflect the true mileage on an automobile. Similarly, an odometer which has "turned over," *i.e.*, reached the 100,000–mile mark and returned to 0 miles, will grossly misrepresent the amount of mileage on a car to an innocent purchaser. To protect the consumer in these situations, Congress imposed certain disclosure requirements on transferors of motor vehicles as a separate method for achieving the goal of full disclosure. *Ryan*, 592 F.2d at 760 n. 4.

■ Under 15 U.S.C. § 1988(a)(1), the transferor of a motor vehicle must give an odometer mileage statement to the transferee which accurately represents the cumulative mileage registered on the odometer. If, however, the transferor has knowledge[8] that the odometer reading is different from the actual mileage on the vehicle, he must disclose that the actual mileage is unknown. 15 U.S.C. § 1988(a)(2). Thus, the Act is intended to prohibit the giving of false odometer statements even by those

who had nothing to do with changing the odometers. *Tusa v. Omaha Auto Auction, Inc.*, 712 F.2d 1248, 1252 (8th Cir. 1983).

■ Relying on the holdings in *Ryan v. Edwards* and *Hughes v. Box*, 814 F.2d 498 (8th Cir.1987), plaintiff argues that the oral misrepresentations allegedly made by defendant are a sufficient basis upon which to impose civil liability, regardless of the accuracy of the odometer. Plaintiff's reliance on *Ryan* and *Hughes* for this proposition, however, is misplaced. Both *Ryan* and *Hughes* involved odometers which had turned over—reached the 100,000–mile mark and returned to 0 miles. As a result, the odometer readings were inaccurate. Aware of this fact, the defendants in both cases accurately transcribed the figure which the odometer registered onto the odometer mileage statement and marked the box indicating that the actual mileage was unknown; however, oral misrepresentations were made to the purchasers to the effect that the vehicles were, in fact, low-mileage vehicles.

The court in *Ryan* found literal compliance with the statute to be insufficient to avoid liability under the federal Odometer Act when a transferor knows that a vehicle's odometer has turned over and no longer accurately represents the mileage on the vehicle. 592 F.2d at 760–61. In this situation, the figure which must be disclosed on the odometer statement is 100,000 miles plus that amount actually registered on the odometer. *Id.* at 761. The court in *Hughes* reached the same result. 814 F.2d at 502. Both courts, however, were faced with a situation where a purchaser could not rely on the odometer reading, but was lulled into relying on it be-

---

**7.** 15 U.S.C. § 1989(a) provides, in relevant part:
    Any person who, with intent to defraud, violates any requirement imposed under this subchapter shall be liable in an amount equal to the sum of—
    (1) three times the amount of damages sustained or $1,500, whichever is the greater; and
    (2) in the case of any successful action to enforce the foregoing liability, the costs of the action with reasonable attorney fees as determined by the court.

**8.** The prevailing view in the courts is that "knowledge" encompasses not only actual knowledge but also reckless disregard for the truth, as well as gross negligence. *Jones v. Hanley Dawson Cadillac Co.*, 848 F.2d 803, 808 (7th Cir.1988); *Tusa v. Omaha Auto Auction, Inc.*, 712 F.2d at 1253. Simple negligence, however, would not be a sufficient basis upon which to impose liability. *Jones v. Hanley Dawson Cadillac Co., supra.*

cause of the seller's false statements and a mileage statement which was technically correct, but which did not alert the purchaser to the fact that the odometer did not register the true mileage on the vehicle.

The case at bar is factually distinguishable. In contrast to those in *Ryan* and *Hughes*, the odometer in this case registered the true mileage of the vehicle and the odometer mileage statement given to plaintiff was also accurate. Furthermore, plaintiff test drove the Isuzu and admits, in his deposition testimony, that he, himself, noticed the odometer reading to be 317–18 miles. Thus, neither *Ryan* nor *Hughes* controls the disposition of this action.

The court concludes that before liability can be imposed under 15 U.S.C. §§ 1988 and 1989, some showing must be made that the odometer does not accurately represent the true mileage on the vehicle.[9] Plaintiff has not alleged or offered proof that the odometer on the Isuzu was anything but accurate. Defendant has thus met its burden of showing that there is an absence of evidence to support plaintiff's case. Accordingly, summary judgment is granted in defendant's favor, dismissing the first count of the complaint.

### *The New Jersey Consumer Fraud Act*

Defendant also moves for summary judgment dismissing the second count of plaintiff's complaint. In the second count, plaintiff alleges that defendant's oral misrepresentations during the negotiation of the lease for the Isuzu constitutes an act of fraud, violative of the New Jersey Consumer Fraud Act. In support of its motion, defendant argues that the facts show plaintiff to be missing an essential element for recovery under the Act (*i.e.*, actual damages), and therefore, the count should be dismissed. Before even reaching this issue, however, the court must determine whether retaining this pendent state law claim is appropriate.

■ Pendent jurisdiction permits a federal court to entertain a state law count arising out of a "common nucleus of operative facts" on which a federal cause of action is based, even though an independent basis of jurisdiction does not exist with regard to the state law claim. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *Weaver v. Marine Bank*, 683 F.2d 744, 746 (3d Cir.1982). Before exercising this power, a district court must find, at a minimum, that a substantial federal claim exists. *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138; *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 196 (3d Cir.1976). The doctrine of pendent jurisdiction is discretionary, however, and even after a substantial federal claim is established, the district court may weigh " 'considerations of judicial economy, convenience and fairness to [the] litigants' " before exercising its discretion in favor of assuming pendent jurisdiction over the state claim. *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139; *Shaffer v. Bd. of School Directors*, 730 F.2d 910, 911–12 (3d Cir.1984).

■ The court's discretionary exercise of pendent jurisdiction is an issue which remains open throughout the litigation. *Dumansky v. United States*, 486 F.Supp. 1078, 1089 (D.N.J.1980). In *Tully v. Mott Supermarkets, Inc.*, the Third Circuit held that absent extraordinary circumstances, if the federal count is dismissed on a 12(b)(6) motion or a motion for summary judgment, then the district court should "ordinarily refrain from exercising pendent jurisdiction [over the state law claims]." 540 F.2d 187, 196 (3d Cir.1976). Thus, it is now well settled Third Circuit jurisprudence that once all federal claims have been dismissed or dropped from a case, the case "simply does not belong in federal court," and "absent extraordinary circumstances, a district court in this circuit is powerless to hear claims lacking an independent jurisdictional basis." *Lovell Mfg. v. Export–Import Bank of the United States*, 843 F.2d 725, 735 (3d Cir.1988).

---

9. *Accord Delay v. Hearn Ford*, 373 F.Supp. 791, 796 (D.S.C.1974) (All that is required of a purchaser before recovery will be allowed is that a change in the odometer reading has occurred and that the seller has failed to disclose the change).

In addition to judicial economy and convenience, the primary purpose in retaining jurisdiction over a state law claim after the federal claim has been dismissed would be to prevent serious prejudice or unfairness to the plaintiff which might result from its dismissal. *Shaffer v. Bd. of School Directors*, 730 F.2d at 912–13. Factors which may be considered include undue cost and delay or, perhaps, the expiration of a statute of limitations which precludes a plaintiff from bringing his state claim in the state forum; however, the time already invested in litigating the state cause of action is an insufficient reason to sustain the exercise of pendent jurisdiction. *Cooley v. Pennsylvania Hous. Fin. Agency*, 830 F.2d 469, 475–76 (3d Cir. 1987).

After applying the above guidelines to the case at bar, it is clear that jurisdiction over the pendent Consumer Fraud Act claim must be declined. The federal claim has been dismissed on summary judgment, and no extraordinary circumstances are present which warrant retaining jurisdiction over this state claim. The New Jersey statute of limitations for fraud is six years. N.J.Stat.Ann. § 2A:14–1 (West 1987); *Hartford Accident and Indemnity Co. v. Baker*, 208 N.J.Super. 131, 135, 504 A.2d 1250 (Law Div.1985). Since plaintiff's cause of action accrued on October 10, 1985, he is not barred from bringing his Consumer Fraud Act claim in state court. Thus, it is appropriate that the state claim fall with the federal claim.

For the reasons set forth above, the defendant's motion for summary judgment as to the first count is granted and the pendent state claim contained within the second count of the complaint is hereby dismissed without prejudice.