The JACOBS MANUFACTURING
COMPANY, Plaintiff,

v.

SAM BROWN COMPANY,

v.

CHICAGO PNEUMATIC TOOL COM-
PANY, Thomas Latimer and Don-
ald B. Sandstrom, Defendants.

No. 84–0887–CV–W–9.

United States District Court,
W.D. Missouri, W.D.

Jan. 8, 1992.

Gary L. Whittier, Shook, Hardy & Bacon, Kansas City, Mo., for plaintiff.

Loeb H. Granoff, Armstrong, Teasdale, Schlafly, Davis & Dicus, Terry L. Tyrrell, Morrison & Hecker, Kansas City, Mo., for defendant.

AMENDED ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND GRANTING, IN THE ALTERNATIVE, PLAINTIFF'S MOTION FOR A NEW TRIAL ON DEFENDANT'S COUNTERCLAIM FOR FRAUD AND NEGLIGENT MISREPRESENTATION

BARTLETT, District Judge.

TABLE OF CONTENTS

I. MOTION FOR DIRECTED VERDICT AND JUDGMENT NOTWITHSTANDING THE VERDICT.

 A. Standard of Review
 B. Fraudulent Misrepresentation Claim
 1. Elements of Claim for Fraudulent Misrepresentation
 2. None of the Representations Should Have Been Submitted to the Jury
 C. Negligent Misrepresentation Claim
 1. Elements of Claim for Negligent Misrepresentation
 2. The Third Representation Should Not Have Been Submitted to the Jury
 D. Jury Award For Lost Future Profits
 1. Loss of Future Profits is a Proper Measure of Damages
 2. Evidence of Lost Future Profits Was Not Speculative
 3. Loss of Future Profits Was Not Directly Caused By Any Misrepresentation
 4. Brown Did Not Waive Claim for Lost Future Profits
 E. Brown Did Not Waive Claim for Southern Region Losses
 F. Jury Award for Punitive Damages
 1. Due Process
 a. Missouri Standard Defining Conduct Subject To Punitive Damages Is Not Unconstitutionally Vague
 b. Instruction 15 Did Not Inform the Jury of Missouri's Standards for Determining the Amount of Punitive Damages
 c. Because of the Defect in Instruction 15, the Instructions Did Not Provide a Sufficient Constraint on the Exercise of the Jury's Discretion
 d. Under the Standard of Review Required by Due Process, the Punitive Damage Award Must Be Vacated for Lack of Evidentiary Basis
 2. Equal Protection
 a. Missouri Standards for the Assessment of Punitive Damages Do Not Violate the Equal Protection Clause
 G. Conclusion

## II. MOTION FOR NEW TRIAL.

A. Standard of Review
B. Punitive Damages Verdict Lacked Evidentiary Basis
C. Verdict was Erroneously Inconsistent
D. Jury's Findings as to Brinkerhoff and Kennedy Lacked Evidentiary Basis
E. Brown Did Not Waive Claim For Southern Region Losses
F. Conclusion
## III. ORDER.

### Background

Beginning on August 20, 1990, evidence was presented to the jury on plaintiff Jacobs Manufacturing Company's claim for an unpaid account and on defendant Sam Brown Company's counterclaims for fraud and negligent misrepresentation. After a directed verdict was entered on plaintiff's claim, the jury returned verdicts for actual and punitive damages in favor of Brown on its counterclaims. Thereafter, Jacobs requested that the jury's verdicts be set aside and that judgment be rendered in its favor in accordance with its Motions for Directed Verdict. In addition, Jacobs moved for judgment notwithstanding the verdict pursuant to Rule 50(b), Federal Rules of Civil Procedure, and for a new trial pursuant to Rule 59, Federal Rules of Civil Procedure.

For the reasons stated in this opinion, Jacobs' Motions for a Directed Verdict and for Judgment Notwithstanding the Verdict will be granted. In the alternative, Jacobs' Motion for New Trial will be granted.

## I. MOTION FOR DIRECTED VERDICT AND JUDGMENT NOTWITHSTANDING THE VERDICT

### A. Standard of Review

The standard for a directed verdict is the same as the standard for judgment notwithstanding the verdict. *City of Omaha Employees Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 651 (8th Cir.1989).

Judgment may be entered in favor of the moving party if there is but one reasonable conclusion about the proper result. *Compton v. United States*, 377 F.2d 408, 411 (8th Cir.1967). Motions for directed verdict and for judgment notwithstanding the verdict challenge the sufficiency of the evidence to support the jury's verdict. *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 61 S.Ct. 189, 194, 85 L.Ed. 147 (1940). In deciding whether to grant a motion for directed verdict or for judgment notwithstanding the verdict, I must consider the evidence in the light most favorable to the non-moving party, assume that all conflicts in the evidence were resolved by the jury in favor of the non-moving party, assume, as proved, all facts which the non-moving party's evidence tends to prove and give the non-moving party the benefit of all reasonable inferences. *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 82 S.Ct. 1404, 1409, 8 L.Ed.2d 777 (1962); *Farner v. Paccar, Inc.*, 562 F.2d 518, 522 (8th Cir.1977). The court may not consider the credibility of the witnesses or the weight of the evidence. *McKnelly v. Sperry Corp.*, 642 F.2d 1101, 1105 (8th Cir.1981). A motion for directed verdict or for judgment notwithstanding the verdict should be granted only if the evidence, together with all reasonable inferences to be drawn therefrom, viewed in the light most favorable to the non-moving party, would not allow a reasonable jury to find in favor of the non-moving party. *Tribble v. Westinghouse Elec. Corp.*, 669 F.2d 1193, 1195–96 (8th Cir.1982), *cert. denied*, 460 U.S. 1080, 103 S.Ct. 1767, 76 L.Ed.2d 342 (1983).

### B. Fraudulent Misrepresentation Claim

Brown contends that Jacobs made three misrepresentations: 1) that Jacobs was not *considering any plans* to change its existing method of distributing the Jake Brake; 2) that Jacobs *had no plans* to change its existing method of distributing the Jake Brake; and 3) that if Brown continued to be a Jake Brake distributor during bad

economic times, its distributorship would continue during good economic times.

Jacobs argues that these representations were never made. In the alternative, Jacobs argues that if they were made, they are not actionable because they were not false when made and representations of future intent must be false when made in order to be actionable.[1]

### 1. Elements of Claim for Fraudulent Misrepresentation

■ In order to prevail on its claim for fraudulent misrepresentation, Brown was required to establish: 1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of the falsity or ignorance of truth; 5) plaintiff's intent that the representation be acted upon; 6) defendant's ignorance of the falsity of the representation; 7) defendant's reliance on the truth of the representation; 8) defendant's right to rely on the representation; and 9) defendant's consequent and proximate injury. *Clark v. Olson*, 726 S.W.2d 718, 719 (Mo. banc 1987). Failure to establish any single element is fatal to the entire claim. *Powers v. Shore*, 248 S.W.2d 1, 5 (Mo. banc 1952). Fraud may never be presumed; therefore, fraud cannot be proved by facts and circumstances which are equally consistent with honesty and good faith. *Macon–Atlanta State Bank v. Gall*, 666 S.W.2d 934, 941 (Mo.App.1984).

■ To establish fraud where a statement of future intent is involved, it must be shown that the speaker at the time of the utterance actually intended to perform inconsistently with his words. *Dillard v. Earnhart*, 457 S.W.2d 666, 670 (Mo. banc 1970); *Craft v. Metromedia, Inc.*, 766 F.2d 1205, 1219 (8th Cir.1985), *cert. denied*, 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986). Absent a present intent to perform inconsistently with the representation, there is no misrepresentation of fact or of state of mind but only breach of a promise

or failure to perform. *Craft*, 766 F.2d at 1219. Mere failure to perform is insufficient to establish fraud. *Brennaman v. Andes & Roberts Bros. Const. Co.*, 506 S.W.2d 462, 465 (Mo.App.1973).

### 2. None of the Representations Should Have Been Submitted to the Jury

■ The first two representations relied upon by Brown as the basis for its fraudulent misrepresentation claim are: 1) Jacobs represented that it was not considering any plans to change its existing method of distributing the Jake Brake, and 2) after July 1981, Jacobs represented that it had no plans to change its existing method of distributing the Jake Brake. Both of these representations are of present fact, not future intent.

With regard to the first representation, there was evidence, including reasonable inferences from the evidence, from which the jury could have concluded reasonably that 1) Jacobs represented it was not considering any plans to change its existing method of distributing the Jake Brake; and 2) Jacobs *was considering* plans to change its existing method of distributing the Jake Brake at the time the representations were made.

With regard to the second representation, there was no evidence from which the jury could reasonably conclude that Jacobs actually had plans to change its method of distributing the Jake Brake when it represented that it had no plans to change its method of distributing the Jake Brake. The evidence that Jacobs was *considering* changing its method of distribution would not permit a reasonable jury to conclude that Jacobs had, therefore, *decided* to change its method of distribution. Brown failed to present evidence from which a reasonable jury could conclude that the second representation was false. Therefore,

**1.** In its Suggestions in Opposition to Plaintiff's Motion for Judgment Notwithstanding the Verdict, Brown, relying on *California & Hawaiian Sugar Co. v. Kansas City Terminal Warehouse Co., Inc.*, 602 F.Supp. 183 (W.D.Mo.1985); *aff'd*, 788 F.2d 1331 (8th Cir.1986), attempts to support the jury's verdict by arguing that this case involves plaintiff's fraudulent failure to disclose that it was considering plans to change its method of distribution. Fraudulent concealment, however, was not a theory of liability asserted by Brown and was not submitted to the jury.

the second representation should not have been submitted to the jury.

The third representation relied upon by Brown is that after July 1981, Jacobs represented that if Brown continued to be a Jake Brake distributor during bad economic times, its distributorship would continue during good economic times.

This is a representation of future intent. There was no evidence presented by Brown from which a reasonable jury could conclude that when this representation were made, Jacobs intended to terminate Brown's distributorship of the Jake Brake when good economic times arrived.

Brown argues that there were several studies done by Jacobs over the years that showed a present intent to terminate the distributorship when the economy improved. Although Brown is correct that these studies recommend the termination of the distributors, there was no evidence from which a reasonable jury could conclude that these recommendations were ever adopted by Jacobs. In fact, Jacobs never eliminated distributors.

Accordingly, the second and third representations should not have been submitted to the jury in Instruction 12, the verdict-directing instruction submitting plaintiff's fraudulent misrepresentation claim. Because the representations were submitted in the disjunctive and the jury believed that Jacobs made the first representation, *see* the jury's response to the special interrogatory designated Instruction 19, the analysis must continue.

Having concluded that there was evidence from which a reasonable jury could conclude that the first representation was made and that it was false, there must have been evidence from which a reasonable jury could have concluded that Brown actually relied on this misrepresentation. *Country Shindig Opry, Inc. v. Cessna Aircraft Co.*, 780 F.2d 1408, 1411–12 (8th Cir.1986). Also, there must be evidence from which a reasonable jury could conclude that Brown had a right to rely on this representation. *Hanson v. Acceptance Finance Co.*, 270 S.W.2d 143, 149 (Mo.App. 1954). (If at some later time it were concluded that there was evidence from which a reasonable jury could have found that either the second or third representations were made and were false, the following discussion of reliance would be applicable to those representations.)

Brown's president had a degree in economics and was an experienced businessman. He had participated in many contract negotiations, distributed products for at least 100 different manufacturers over the years and had the services of an experienced attorney readily available. For eight successive years, Brown's president signed distributorship agreements providing that 1) the term of the agreement was one year and was terminable without cause on 30 days notice, 2) Jacobs reserved the right to sell directly to any original equipment manufacturer, 3) the written agreement was the sole agreement between the parties and 4) no amendment to that agreement was binding unless agreed to in writing.

Bernard Brown testified that the provisions of the agreement concerning its duration and Jacobs' reservation of the right to sell directly to original equipment manufacturers were merely boilerplate. Brown's constant repetition of "boiler-plate" when combined with a disdainful tone of voice, communicated to the jury that the words in the agreement were meaningless. In fact, these were provisions that Brown, as president of the defendant, agreed to and that Jacobs and defendant Brown intended to govern their relationship. If Brown treated them as cavalierly as he suggested to the jury that it should and if he relied on inferences drawn from various events that were in direct conflict to written provisions of the contract, he must bear the consequences of his ill-advised behavior.

No facts were presented that would, as a matter of law, justify Brown's reliance on oral statements or inferences from oral statements directly conflicting with the clear, written terms of the agreement with Jacobs. Brown never consulted with his attorney about the legal effect of the written agreements. According to his testimony, he invested hundreds of thousands of dollars and incurred large losses based on

his assumption that oral statements by various people at Jacobs carried more weight than the written agreements. If Brown remained a Jacobs distributor because of oral representations that Brown had a future as a Jacobs distributor, under the same conditions as in the past, while at the same time signing written distributorship agreements that conflicted with these oral statements, Brown must bear the consequences. The law will not protect Brown from his own carelessness.

Furthermore, there was unchallenged evidence that Brown knew Jacobs was considering changes in its method of distribution but that Brown went ahead and signed another agreement. On July 28, 1982, Bernard Brown, president of Sam Brown Company, wrote Jacobs demanding "a statement from Jacobs indicating what their position would be and if, in fact, the distributor will continue to be a part of the marketing policy of Jacobs or that OEMs and large fleets will be shipped direct from Hartford as is the apparent indication at this point." Defendant's Exhibit 8267. Jacobs responded, "Future market conditions and demands may require a change in the manner in which Jacobs satisfies the requirements of superfleets and vehicle and engine OEMs." Plaintiff's Exhibit 12. Brown responded by saying in part, "It seems to me that Jacobs' management has apparently set in motion a far-reaching plan to change your method of distribution which will affect your independent distributors such as ourselves.... Since you have unilaterally re-evaluated your policies, we will have to do the same." Defendant's Exhibit 8269. After this exchange of correspondence, Brown entered into a distribution contract with Jacobs on essentially the same terms as in previous years. Plaintiff's Exhibit 211. There was no evidence that Jacobs made some misrepresentation in the four months between the correspondence quoted above and the signing of the next agreement that induced Brown to sign a new agreement.

Accordingly, a reasonable jury could not have determined that Brown was justified in relying on representations that Jacobs

was not considering changing its method of distribution.

These conclusions are fatal to Brown's claim of fraudulent misrepresentation. The claim never should have been submitted to the jury. Therefore, Jacobs' Motions for Directed Verdict and for Judgment Notwithstanding the Verdict will be granted on Jacobs' fraudulent misrepresentation claim.

### C. Negligent Misrepresentation Claim

The jury found that Jacobs negligently represented "from and after July 1981, that if Sam Brown Company continued to be a 'Jake Brake' distributor during bad economic times, its 'Jake Brake' distributorship would continue during good economic times." See jury's response to special interrogatory designated Instruction 20.

#### 1. Elements of Claim for Negligent Misrepresentation

The elements of a negligent misrepresentation claim are that: 1) the defendant supplied information in the course of its business or because of some other pecuniary interest; 2) because of a failure by defendant to exercise reasonable care or competence, the information was false; 3) the information was intentionally provided by defendant for the guidance of a limited group, including plaintiff, in a particular business transaction; and 4) in relying on the information, plaintiff suffered a pecuniary loss. *Frame v. Boatmen's Bank*, 782 S.W.2d 117, 121 (Mo.App.1989); *Chubb Group of Ins. Companies v. C.F. Murphy & Associates, Inc.*, 656 S.W.2d 766, 783–784 (Mo.App.1983). Liability for negligent misrepresentation has been limited to situations where 1) the defendant has knowledge of the specific injured party's reliance; or 2) the plaintiff is a member of a group that the defendant seeks to influence; or 3) the defendant has special reason to know that some member of a limited group will rely on the information. *Chubb*, 656 S.W.2d at 784; *Mark Twain Plaza Bank v. Lowell H. Listrom & Co.*, 714 S.W.2d 859, 865 (Mo.App.1986).

## 2. The Third Representation Should Not Have Been Submitted to the Jury

Whereas fraudulent misrepresentation requires proof that the speaker *knew* the statement was untrue or was *reckless* as to whether the statement was true or false, negligent misrepresentation "merely requires proof that the [speaker] failed to exercise reasonable care or competence to obtain or communicate true information." *Huttegger v. Davis*, 599 S.W.2d 506, 516 (Mo. banc 1980) (Welliver, J., dissenting). A negligent misrepresentation claim is premised upon the theory that the speaker believed that the information supplied was correct, but was negligent in so believing. The typical action for negligent misrepresentation thus involves a representation of an *existing fact, not* a representation of *future intent*. While it is possible to be negligent in failing to ascertain the truth or falsity of an existing fact, it is impossible to be negligent in failing to ascertain the truth or falsity of one's own future intentions. One cannot negligently represent his or her own state of mind. *See Restatement (Second) of Torts* § 530 cmt. b (1977). Even if one states an intent to act in a certain manner and is merely *uncertain* if one intends to act in that manner, the statement is not negligent but deceitful because one *knows* about the uncertainty of one's future intent.

Consequently, no cause of action exists for negligent misrepresentation of the promisor's intention to perform an agreement. *City of Warrensburg, Mo. v. RCA Corp.*, 571 F.Supp. 743 (W.D.Mo.1983).

Here, the representation the jury believed was negligently made is a statement about Jacobs' intent to perform in a certain way in the future. Because no cause of action exists for negligent representation of future intent, it was error to submit this representation to the jury.

If this were not a representation of future intent, there would have to have been evidence from which a reasonable jury could conclude that Brown actually relied on the misrepresentation. *Chubb*, 656 S.W.2d at 783–784. For the reasons discussed in the analysis of Brown's fraudulent misrepresentation claim, a reasonable jury could not have concluded that Brown relied on the representation or, if it did, that Brown used ordinary care in so doing.

Accordingly, Jacobs' Motions for Directed Verdict and for Judgment Notwithstanding the Verdict on Brown's negligent misrepresentation claim will be granted.

### D. *Jury Award for Lost Future Profits Should be Vacated*

The jury awarded Brown $2,220,637 in lost future profits for the five-year period beginning in 1984. Jacobs asserts four reasons to vacate this award: 1) loss of future profits is not a proper measure of damages for fraudulent or negligent representation, 2) the evidence of lost future profits was speculative, 3) any loss of future profits was not the proximate result of any of the claimed fraudulent or negligent representations, and 4) Brown waived any claim for lost future profits.

### 1. Loss of Future Profits is a Proper Measure of Damages

Jacobs contends that the traditional "benefit of the bargain" measure of damages is not applicable where the claim is fraudulent inducement to continue a distributorship agreement. According to Jacobs, damages are correctly measured by the net *losses* the distributor can prove were sustained as a result of and during the continuation of the distributorship, not by lost future profits.

Brown agrees that the traditional "benefit of the bargain" measure does not apply to this case but disputes Jacobs' contention that lost future profits are unrecoverable.

The general rule is that prospective profits are recoverable when an established business is interrupted by tortious conduct if it is proved that 1) it is reasonably certain that profits would have been realized except for the tort and 2) the lost profits can be ascertained and measured, from the evidence introduced, with reasonable certainty. *Riddle v. Dean Machinery Co.*, 564 S.W.2d 238, 257 (Mo.App.1978), citing 22 Am.Jur.2d, Damages § 177 (presently § 639 (1988)).

Jacobs' reliance on *Central Microfilm Service Corp. v. Basic/Four Corp.*, 688 F.2d 1206, 1220–1221 (8th Cir.1982), *cert. denied*, 459 U.S. 1204, 103 S.Ct. 1191, 75 L.Ed.2d 436 (1983), as authority to the contrary is mistaken. There, the defendant was sued for fraudulently inducing the plaintiff to continue as a software dealer for defendant. Jacobs relies on the following language:

> As to fraud in a transaction, the typical "bargain theory" measure is the difference between the actual value and the represented value of the subject of the transaction. *See Smith v. Tracy, supra*, 372 S.W.2d [925] at 938. Such a measure simply makes no sense in this case, given the nature of the fraud. [Defendant] did not make representations as to specific values or as to particular facts directly relating to such values. It fraudulently induced [plaintiff] to continue as a dealer and the harm from such continuation is best measured by the net losses incurred as result [sic] of it.

*Central Microfilm*, 688 F.2d at 1220–1221.

Although it is true that the nature of the fraud here is the same as in *Central Microfilm*, I do not believe that the last-quoted sentence was intended to preclude recovery of lost future profits in all cases. In *Central Microfilm*, the plaintiff "introduced no evidence of future profits and sought no recovery on such a basis." *Id.* at 1220. The plaintiff actually pursued a "reliance or out-of-pocket loss theory." *Id.* Thus, the court's statement that "the harm from such continuation is best measured by the net losses incurred as result of it" must be read simply as an acknowledgment that, of the two theories presented to it, the out-of-pocket loss theory was the more appropriate because 1) it was the theory actually pursued, and 2) the traditional method of computing the "benefit of the bargain" did not fit the facts. The court did not discuss whether an alternative method of computing the "benefit of the bargain," *e.g.*, lost profits, would fit the facts because the issue was not raised.

### 2. Evidence of Lost Future Profits Was Not Speculative

Jacobs contends that the evidence of lost future profits was speculative, and, therefore, there was no evidentiary basis for the award of lost future profits.

■ Generally, recovery of anticipated profits of a commercial business is not allowed because the existence and amount of lost future profits is too remote, speculative and dependent upon changing circumstances. *Coonis v. Rogers*, 429 S.W.2d 709, 714 (Mo. banc 1968); *Mills v. Murray*, 472 S.W.2d 6, 16–17 (Mo.App.1971). Nevertheless, anticipated profits may be recovered when they are made reasonably certain by proof of facts permitting a rational estimate of their amount. *Coonis*, 429 S.W.2d at 714; *Gasser v. John Knox Village*, 761 S.W.2d 728, 731–732 (Mo.App. 1988). Although the estimate of loss may not be based on speculation or conjecture, *John Knox Village*, 761 S.W.2d at 732, a wrongdoer will not be allowed to escape liability because the amount of resulting loss is not susceptible of exact proof. *Denton Const. Co. v. Missouri State Highway Commission*, 454 S.W.2d 44, 56 (Mo. banc 1970); *Scullin Steel Co. v. PACCAR, Inc.*, 708 S.W.2d 756, 761 (Mo.App.1986).

■ Jacobs argues that Brown's future profit claim was based on Dr. Pflaum's speculation that there was a correlation between Brown's sale of Jake Brakes and the sale of Class 7 and 8 trucks in the United States. Although the basis for Pflaum's correlation theory was vigorously attacked on cross-examination, the jury was properly left to determine whether they believed Dr. Pflaum's conclusion after plaintiff's challenge to the basis for it. A reasonable jury could conclude that there was a correlation between the defendant's sales of Jake Brakes and the sales of large trucks.

Similarly, other parts of defendant's lost profits analysis were attacked on cross-examination. Plaintiff's counsel developed good material to use in arguing that defendant's conclusions about lost profits were not persuasive. The jury was properly allowed to weigh the evidence.

### 3. Loss of Future Profits Was Not Directly Caused by Any Misrepresentation

Jacobs argues that Brown failed to prove that the loss of future profits was proximately caused by any of the alleged fraudulent or negligent misrepresentations because Brown was offered a distribution agreement for 1984 but declined to sign it.

■ To be recoverable under either a fraud or negligence theory, lost future profits damages must be shown to be a direct consequence of the misrepresentation. The misrepresentation must be the proximate and not the remote cause of the damages. *Heberer v. Shell Oil Co.*, 744 S.W.2d 441, 443–444 (Mo. banc 1988); *see Quality Wig Co. v. J.C. Nichols Co.*, 728 S.W.2d 611, 618 (Mo.App.1987).

■ In light of the previous analysis, Jacobs' argument can be rephrased as follows: Brown failed to present evidence from which a reasonable jury could conclude that Brown suffered a loss of future profits as a direct result of Jacobs' representation that it was not considering changing its method of distributing the Jake Brake.

Whether there was proximate cause is a jury question so long as there is evidence from which a reasonable jury could find proximate cause. I do not believe that a reasonable jury could have concluded that the "not considering" misrepresentation directly caused a loss of future profits because 1) Brown knew that Jacobs was considering changing its method of distribution as early as July 28, 1982, 2) Brown knew that each of the written agreements Brown signed allowed Jacobs to sell directly to OEMs, 3) direct sales to OEMs was one of Brown's biggest problems with the changes Jacobs implemented and 4) Brown was so vague about why he did not agree to the 1984 distributorship agreement that was offered to him.

### 4. Brown Did Not Waive Claim for Lost Future Profits

The following waiver clause appears in all eight distributorship agreements signed by Brown:

Upon termination, no indemnity shall be payable to the Distributor for loss of profits, good will, and the like, or for advertising costs, termination of employees, employees' salaries and the like, and the Distributor hereby expressly waives any rights he may have under law to receive such indemnity.

*See*, e.g., Tab 5, Plaintiff's Appendix to Motion for Judgment Notwithstanding the Verdict or in the Alternative for New Trial.

Jacobs contends that by suing for damages, Brown has elected to affirm the contract and, accordingly, must be bound by the waiver-of-damages clause in that contract.

■ Upon discovery of a fraud, the defrauded party has a choice of remedies. The contract may be rescinded and recovery had for what was paid or the contract may be affirmed and recovery had for the damages caused by the fraud. The defrauded party cannot pursue to a final conclusion both a claim for rescission and a claim for damages. The defrauded party cannot both affirm and disaffirm the contract. *Centerre Bank of Kansas City, N.A. v. Distributors, Inc.*, 705 S.W.2d 42, 51 (Mo.App.1985); 25 Am.Jur.2d, Election of Remedies, § 27 (1966).

Thus, Jacobs is correct that by suing for damages for fraud, Brown has affirmed the contract. Brown's argument to the contrary misconstrues the authority it cites. Brown relies primarily upon *Western Fireproofing Co. v. W.R. Grace & Co.*, 896 F.2d 286, 290 (8th Cir.1990):

Under Missouri law, a party who is the victim of fraud in the inducement of a contract may choose among three avenues of relief. The party may: (1) rescind the contract and seek restoration of the status quo; (2) affirm the contract and pursue whatever contractual remedies may be available; or (3) bring an action seeking damages for the asserted fraud.

Brown argues that seeking damages for fraud—the third option listed in *Western Fireproofing*—requires neither an affirmance nor a disaffirmance of the contract.

Thus, Brown asserts that it did not affirm the contract by seeking damages for fraud. Therefore, the waiver of damages clause in the contract does not apply.

The Supreme Court of Missouri disagrees:

> By bringing an action for damages for fraud, the defrauded party elects to treat the contract as subsisting, and, in effect, affirms it, thereby consenting to be bound by its provisions, without releasing or waiving his claim for damages arising from the fraud.

*Johnson v. Bray,* 31 S.W.2d 998, 1001 (Mo. banc 1930).

The third option in *Western Fireproofing* should be: "(3) *affirm the contract and* bring an action seeking damages for the asserted fraud." Option three is distinguishable from option two by the *form of remedy.* Options two and three both affirm the contract, but option two involves a *contract* remedy, whereas option three involves a *tort* remedy.

Thus, Brown affirmed the contract by electing to seek damages for fraud.

■ Jacobs correctly asserts that a damage waiver provision generally is not against public policy is Missouri, *see* Mo. Rev.Stat. § 400.2–719(3). However, the issue is not whether such a clause generally is enforceable in an action based on contract, but whether it is enforceable in an action based on fraud. "It is well settled, of course, that the law will not sustain a covenant of immunity which protects against fraud, contravenes public policy, is prejudicial to the public welfare, is contrary to good morals, or relieves one of a duty imposed by law for the public benefit." *United States v. United States Cartridge Co.,* 198 F.2d 456, 464 (8th Cir.1952), *cert. denied,* 345 U.S. 910, 73 S.Ct. 645, 97 L.Ed. 1345 (1953). A party to a contract cannot, by misrepresentation of a material fact, induce the other party to enter into the contract to his damage, and then protect himself from the legal effect of such misrepresentation by inserting a clause in the contract to the effect that he is not to be held liable for the misrepresentation. *See Beshears v. S–H–S Motor Sales Corp.,* 433

S.W.2d 66 (Mo.App.1968); *Slater v. KFC Corp.,* 621 F.2d 932, 936 (8th Cir.1980).

Assuming that Jacobs had presented evidence from which a reasonable jury could have concluded that the elements of a claim for fraudulent misrepresentation had been established, the contractual waiver provision relied upon by Jacobs would not prevent recovery of lost future profits.

### E. *Brown Did Not Waive Claim for Southern Region Losses*

In addition to the future profits for the years 1984 through 1988, the jury awarded Brown $271,155.35 in out-of-pocket losses for the southern region. Jacobs contends that Brown waived its claim to these losses 1) during Brown's opening statement and 2) during a discussion of an evidentiary objection at the bench.

Brown maintains that it waived only "capital expense and investment losses in the Southern Region, *not* out-of-pocket losses." Further, Brown contends that even if it waived out-of-pocket losses for the Southern Region in the manner asserted by Jacobs, Jacobs subsequently waived the waiver by not objecting to Brown's request in Brown's closing argument for out-of-pocket losses for the Southern Region.

■ Generally, admissions of fact made by counsel are binding upon their principals so long as they are unequivocal. *Glick v. White Motor Co.,* 458 F.2d 1287, 1291 (3rd Cir.1972); *Wieder v. Towmotor Corp.,* 568 F.Supp. 1058, 1063 (E.D.Pa.1983), *aff'd* 734 F.2d 9 (3rd Cir.1984). Where, however, a doubt exists as to the purported admission, the issue may not be removed from the jury's consideration. *Id.; Rhoades, Inc. v. United Air Lines, Inc.,* 340 F.2d 481, 484 (3rd Cir.1965).

■ I agree that Brown's counsel waived a claim for Southern Region losses in his opening statement and during the bench conference relied upon by Jacobs. (I allowed the testimony about the investment in the Southern Region only as an aide to the jury in making a determination about lost future profits.) However, the clarity

of that waiver was destroyed by later events during the trial, i.e., Bernard Brown's testimony quoted by defendant in Doc. 238 at 39–40, Group Exhibit E, the stipulation as to Group Exhibit E and defendant's closing argument. Therefore, I believe that the issue of Southern Region losses was properly left to the jury.

### F. *Jury Award For Punitive Damages Should Be Vacated*

The jury awarded Brown $2,700,000 in punitive damages. Jacobs argues that the award (1) violates due process, (2) was not supported by sufficient evidence, and (3) violates equal protection.

#### 1. Due Process

Jacobs asserts that Missouri law on punitive damages violates procedural due process because Missouri law (a) is unconstitutionally vague as to the type of conduct that renders one liable to punitive damages, (b) provides no meaningful guidelines for or limitations on the fact finder in determining the amount of punitive damages, and (c) requires the wrong standard of proof.

##### a. *Missouri Standard Defining Conduct Subject To Punitive Damages Is Not Unconstitutionally Vague*

Jacobs contends that Missouri law is unconstitutionally vague in describing the type of conduct that exposes one to punitive damages liability. According to Jacobs, Missouri requires a "willful, wanton or malicious culpable mental state" in order to award punitive damages. Jacobs contends, however, that the Missouri Supreme Court has not defined the specific conduct which violates this standard or otherwise given guidance to a jury about what conduct would support an award of punitive damages. Jacobs contends that the "overwhelming uncertainty" about what conduct satisfies the Missouri standard makes the Missouri standard unconstitutionally vague.

In *Burnett v. Griffith*, 769 S.W.2d 780, 787 (Mo. banc 1989), the Missouri Supreme Court discussed at length the purpose of punitive damages and the level of malice required to support an award of punitive damages:

Justified as punishment and intended to make an example of a defendant on account of his outrageous conduct, punitive damages require a showing of a culpable mental state on the part of the defendant, either by a wanton, willful or outrageous act or reckless disregard (from which evil motive is inferred) for an act's consequences. 'Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or reckless indifference to the rights of others.' [Citation omitted.] It is not so much the commission of the intentional tort as the conduct or motives—the defendant's state of mind—which prompted its commission that form the basis for a punitive damage award.... Plaintiff must prove the defendant's evil hand was guided by an evil mind.

The court set forth the form and content of a proper punitive damages jury instruction "in language readily understood by lawyers and lay people alike," *id.* at 789, so that a jury of lay people could properly determine "conduct for which punitive damages are appropriate." *Id.*[2]

■ In *Grayned v. City of Rockford*, 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972), the United States Supreme Court stated that:

Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give

---

**2.** "Henceforth, MAI 10.01 should read:
If you find the issues in favor of plaintiff, and if you believe the conduct of the defendant as submitted in Instruction Number ___ (here insert number of plaintiff's verdict directing instruction) was outrageous because of defendant's evil motive or reckless indifference to the rights of others, then in addition to any damages to which you find plaintiff entitled under Instruction Number ___, you may award plaintiff an additional amount as punitive damages in such sum as you believe will serve to punish defendant and to deter him and others from like conduct."
*Burnett,* 769 S.W.2d at 789.

the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications.

To succeed on a claim of vagueness in violation of due process, the complainant "must demonstrate that the law is impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982).

▌ Jacobs argues that the standard for imposing punitive damages does not afford sufficient notice of the types of conduct that may subject the defendant to punitive damages. This argument addresses a different issue than that addressed in *Grayned.* There, the issue was reasonable notice of prohibited conduct. Vague laws offend because they do not allow us to "steer between lawful and unlawful *conduct.*" Here, Jacobs is not arguing that the law gives insufficient notice of prohibited conduct. Jacobs is not arguing, for example, that the law does not sufficiently inform it that fraudulent conduct is prohibited. Jacobs is actually arguing that the law gives insufficient notice of the precise *punishment* for conduct that Jacobs knew was prohibited.[3] Jacobs' argument raises the question of whether the vagueness doctrine applies to punishment.

Vague sentencing provisions may present constitutional questions if they do not state with sufficient clarity the punishment for violating a *criminal* statute. *United States v. Batchelder*, 442 U.S. 114, 123, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979). I am cited to no authority, and my own research has revealed no authority, that applies the vagueness doctrine to the standard for civil *punishment.* Because punitive damages are penal in nature, however, it will be assumed for the purposes of this analysis that the vagueness doctrine applies to the standard for awarding punitive damages.

Under *Grayned,* it is necessary to determine whether the law gives reasonable notice of prohibited behavior to potential wrongdoers and provides explicit standards to those who apply the law. The Supreme Court has stated that "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Flipside*, 455 U.S. at 498, 102 S.Ct. at 1193.

The jury instruction adopted by the Missouri Supreme Court in *Burnett* requires that there be some element of outrage to justify punitive damages, that conduct is "outrageous" because of "evil motive or reckless indifference" and that the purpose of punitive damages is to punish and deter. As expressed in *Burnett*, Missouri's standard for the award of punitive damages provides a sufficient scienter requirement to give guidance to potential wrongdoers and to juries as to what conduct supports an award of punitive damages. The Missouri punitive damages standard is not unconstitutionally vague.

b. *Instruction 15 Did Not Inform the Jury of Missouri's Standards for Determining the Amount of Punitive Damages*

Jacobs next asserts that (i) because there are no standards for the jury to apply in setting the *amount* of a punitive damages award, and (ii) because there is no upper limit on the *amount* of punitive damages that may be awarded, the determination of the amount of punitive damages awarded is committed solely to the unfettered discretion of the jury.

In Missouri, the jury has great discretion in fixing the amount of punitive damages:

---

**3.** Jacobs' "void for vagueness" argument is also unusual in that the vagueness doctrine generally applies to *statutes,* not to *caselaw.* Jacobs is complaining here that court-created standards for punitive damages are unduly vague.

The question of whether or not punitive damages shall be awarded and, if so, in what amount rests peculiarly in the discretion of the jury. In exercising such discretion and arriving at its conclusions, the jury must, of necessity, consider all of the facts and circumstances surrounding the incident and the party to the cause.

*Wisner v. S.S. Kresge Co.*, 465 S.W.2d 666, 669 (Mo.App.1971). "[A] hard and fast rule for the measuring of [punitive] damages cannot be declared." *Wheeler v. Community Federal Sav. and Loan Assoc.*, 702 S.W.2d 83, 87 (Mo.App.1985) (quoting *Sperry v. Hurd*, 267 Mo. 628, 185 S.W. 170, 174 (1916).

 Punitive damages are awarded in Missouri for the purpose of punishing the wrongdoing defendant and also for the purpose of deterring defendant and others from similar wrongful conduct in the future. *State ex rel. Smith v. Greene*, 494 S.W.2d 55 (Mo. banc 1973); *Boyer v. Grandview Manor Care Center, Inc.*, 759 S.W.2d 230 (Mo.App.1988). In addition, punitive damages must have some reasonable relation to the injury inflicted and the cause thereof. *State ex rel. St. Joseph Belt R. Co. v. Shain*, 341 Mo. 733, 108 S.W.2d 351, 356 (1937); *Wheeler*, 702 S.W.2d at 88; *Holcroft v. Missouri–Kansas–Texas R. Co.*, 607 S.W.2d 158, 163 (Mo. App.1980).

In this case, Instruction 15 gave the jury the only guidance it had on what conduct would justify the imposition of punitive damages *and* how to determine the amount of punitive damages to award. Instruction 15 conforms to Missouri Approved Instruction 10.01, as revised by *Burnett*, 769 S.W.2d at 789.

If you find in favor of Sam Brown Company on the fraudulent misrepresentation claim in Instruction 12 and if you believe the conduct of Jacobs Manufacturing Company as submitted in Instruction 12 was outrageous because of Jacobs Manufacturing Company's evil motive or reckless indifference to the rights of Sam Brown Company, then in addition to any damages to which you find Sam

Brown Company entitled under Instruction 14, you may award Sam Brown Company an additional amount as punitive damages to punish Jacobs Manufacturing Company and to deter Jacobs Manufacturing Company and others from like conduct. Please check the appropriate blank on Verdict A.

If you unanimously agree that punitive damages should be awarded against Jacobs Manufacturing Company, there will be a further short proceeding in the courtroom before you deliberate on the amount of punitive damages.

On its face, Instruction 15 does not incorporate the Missouri requirement that the amount of punitive damages awarded must have a reasonable relation to the injury inflicted and the conduct that caused the injury. However, the Missouri Supreme Court approved this instruction presumably being fully aware of the Missouri decisions requiring a reasonable relationship between the amount of punitive damages awarded and the injury inflicted and the conduct that caused that injury. Because the Missouri Supreme Court did not overrule the decisions establishing the need for this relationship, I assume that the Missouri Supreme Court must have assumed that the need for this relationship was inherent in the concept of punishment. If that was the Missouri Supreme Court's thinking, it is far too obtuse for the average juror to appreciate. Without expressly stating the need for the relationship, a jury would not realize that any award of punitive damages must have a reasonable relationship to the harm caused and the conduct causing the harm.

 If a "preponderance of the evidence" burden of proof is used for determining liability for punitive damages, due process requires that during post-judgment review of punitive damage awards, consideration must be given to whether the amount of punitive damages awarded was reasonably related to the harm that was caused by the conduct being punished. (*See* discussion in next section of this opinion.) To make this post-judgment review both an effective constraint and consistent

with a jury's role as factfinder, the jury must be told that it must consider this relationship in determining the amount of punitive damages. Otherwise, the jury's decision is being reviewed for conformity with a standard it never considered.

Under this analysis, Instruction 15 is fatally defective because it did not provide the jury with any guidance in how to determine the amount of punitive damages to be awarded.

c. *Because of the Defect in Instruction 15, the Instructions Did Not Provide a Sufficient Constraint on the Exercise of the Jury's Discretion*

Jacobs next argues that due process requires a heightened standard of proof for punitive damages and suggests that "clear and convincing" is the appropriate standard.

The Missouri Supreme Court has rejected this standard: "The defendant argues that punitive damages submissions should require 'clear and convincing' evidence. This requirement is contrary to our normal requirements in the submission of civil cases. We are not disposed so to hold, or to follow cases from other jurisdictions so holding." *Menaugh v. Resler Optometry, Inc.*, 799 S.W.2d 71, 75 (Mo. banc 1990).

In *Pacific Mut. Life Ins. Co. v. Haslip*, ⸺ U.S. ⸺, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), the United States Supreme Court stated that "as long as the [punitive damages factfinder's] discretion is exercised within reasonable constraints, due process is satisfied." *Haslip*, 111 S.Ct. at 1044. The Court suggested that the absence of adequate procedural and substantive restraints on jury discretion might require a burden of proof greater than "preponderance of the evidence." *Haslip*, 111 S.Ct. at 1046 n. 11.

In evaluating the procedure for awarding punitive damages in Alabama the Court noted two constraints that controlled jury discretion. First, the trial court properly explained the deterrent and punishment purposes of punitive damages. *Id.* at 1044. Second, both the trial court and the appellate court applied independent substantive criteria of review required by Alabama law

(even to the extent of considering evidence that was not before the jury) to ensure that the award was reasonable in amount and rational in light of the purposes of punitive damages to punish and deter. *Id.* at 1044–1045. The Supreme Court held that this post-trial review of punitive damage awards, in conjunction with a proper instruction to the jury, provided an adequate constraint on jury discretion to satisfy due process. Therefore, a "preponderance of the evidence" burden of proof was acceptable. *Id.* at 1046 n. 11.

In *Haslip*, the punitive damages were awarded in state court and the post-judgment review was conducted by state courts. In a diversity case in federal court, a district court must apply the substantive law of the state when instructing the jury on punitive damages. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The standards for post-judgment review, however, are supplied by federal law. Post-judgment review by the district judge is governed by standards established for applying Rules 50(b) (directed verdict and j.n.o.v.) and 59 (new trial). Therefore, federal court review of a punitive damage award in a diversity case involves application of the constraints placed on jury discretion both by state substantive law and by the standards governing federal post-trial review.

> Review of the District Court's order involves questions of both state and federal law. In a diversity action, or in any other lawsuit where state law provides the basis of decision, the propriety of an award of punitive damages for the conduct in question, and the factors the jury may consider in determining their amount, are questions of state law. Federal law, however, will control on those issues involving the proper review of the jury award by a federal district court and court of appeals.

*Browing–Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 279, 109 S.Ct. 2909, 2922, 106 L.Ed.2d 219 (1989).

■ Therefore, I must determine whether there were sufficient constraints on jury discretion in this case.

I instructed the jury substantially in compliance with the law of Missouri. Instruction 15 informed the jury that (i) the imposition of punitive damages was not mandatory, (ii) the purpose of punitive damages was to punish and to deter Jacobs and others from like conduct and (iii) whichever fraudulent misrepresentation(s) the jury believed were made had to amount to "outrageous conduct" resulting from an "evil motive or reckless indifference to the rights of others." Although Instruction 15 gives adequate guidance to the jury in determining whether to award any punitive damages, it fails to give the jury guidance about how to determine the amount. (*See, e.g.,* the last paragraph of the instruction to the jury in *Haslip,* 111 S.Ct. at 1037 n. 1: "Should you award punitive damages, in fixing the amount, you must take into consideration the character and the degree of the wrong as shown by the evidence and necessity of preventing similar wrong.") Consequently, the substantive constraints placed by Missouri law upon this jury do not satisfy due process.

d. *Under the Standard of Review Required by Due Process, the Punitive Damage Award Must be Vacated for Lack of Evidentiary Basis*

■ Turning to the constraints on jury discretion by post-trial review by this court and the Court of Appeals, the Supreme Court has described the district court's role in reviewing a punitive damages award:

> In reviewing an award of punitive damages, the role of the district court is to determine whether the jury's verdict is within the confines set by state law, and to determine, by reference to federal standards developed under Rule 59, whether a new trial or remittitur should be ordered. Courts of Appeal should then review the District Court's determination under an abuse-of-discretion standard.

*Browing–Ferris,* 492 U.S. at 279, 109 S.Ct. at 2922.

Federal court post-judgment review under Rules 50(b) and 59 is more deferential to jury verdicts than post-judgment review in Alabama. Under Rule 50(b), judgment notwithstanding the verdict should be granted only when the evidence, viewed in the light most favorable to the prevailing party, "points one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party." *Charles Woods Television Corp. v. Capital Cities/ABC, Inc.,* 869 F.2d 1155, 1159–1160 (8th Cir.), *cert. denied,* 493 U.S. 848, 110 S.Ct. 145, 107 L.Ed.2d 104 (1989). Under Rule 59, a new trial may not be granted on the ground that a jury's verdict is excessive unless the court concludes that the jury's verdict is a "plain injustice" or a "monstrous" or "shocking" result. *Stafford v. Neurological Medicine, Inc.,* 811 F.2d 470, 475 (8th Cir.1987). In light of *Haslip,* does review under these standards provide sufficient restraint on the jury's discretion to satisfy due process?

In order for post-trial review in this case to be "meaningful and adequate" and, therefore, an additional check on the jury's discretion, consideration must be given to those aspects of the Alabama review process that the Supreme Court in *Haslip* concluded provided meaningful review.

> (a) whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually has occurred; (b) the degree of reprehensibility of the defendant's conduct, the duration of that conduct, the defendant's awareness, any concealment, and the existence and frequency of similar past conduct; (c) the profitability to the defendant of the wrongful conduct and the desirability of removing that profit and of having the defendant also sustain a loss; (d) the 'financial position' of the defendant; (e) all the costs of litigation; (f) the imposition of criminal sanctions on the defendant for its conduct, these to be taken in mitigation; and (g) the existence of other civil awards against the defendant for

the same conduct, these also to be taken in mitigation.

*Haslip,* 111 S.Ct. at 1045.

I am persuaded that if post-judgment review of punitive damage awards in diversity cases is to be a meaningful restraint on a fact finder's discretion, factors such as these must be utilized in post-judgment review. If they are, the heightened standard of proof proposed by Jacobs is not necessary. If they are not, a heightened standard of proof is necessary to afford plaintiff due process.

For the reasons already discussed in this opinion, the issue of punitive damages never should have been presented to the jury because, as a matter of law, defendant's counterclaim for fraudulent misrepresentation should not have been submitted to the jury. Even if the fraudulent misrepresentation claim had been properly submitted, punitive damages of $2.7 million dollars in this case can only be the result of passion and not the result of the exercise of reasoned discretion. A reasonable mind reviewing this evidence could not find "reckless disregard (from which evil motive is inferred)" for the consequences of plaintiff's behavior with regard to the distributorship relationship with defendant.

Each year the defendant, through its highly educated, experienced president, with ready access to legal counsel, agreed in writing to the terms that would govern the business relationship with plaintiff. In each of the yearly agreements, Brown agreed that the agreement would only be one year in duration and that the written agreement contained all the parties' promises to each other. In this case, defendant's position was that the terms of its solemn, written agreement were meaningless. Instead of the written agreement, defendant contended that it took sales talk, *e.g.,* "we expect our relationship to last forever," as a promise and relied upon it over the terms of the written agreement. Under these facts, a reasonable jury could not fairly conclude that plaintiff's conduct

was either outrageous or so reckless as to permit an inference of evil motive.

■ Also, the amount of punitive damages awarded by the jury was so unrealistic as to demonstrate irrational rather than reasonable behavior. If defendant suffered any harm, it was the result of causes such as poor economic conditions or poor management rather than plaintiff's behavior. A punitive damage award of $2.7 million dollars in addition to a judgment for all the actual damages claimed by defendant bears no rational relationship to the harm likely to result or to the harm that actually occurred.

2. Equal Protection

a. *Missouri Standards for the Assessment of Punitive Damages Do Not Violate the Equal Protection Clause*

Jacobs makes two arguments to support its assertion that punitive damages, as currently imposed, violate the Equal Protection Clause of the 14th Amendment to the U.S. Constitution. First, Jacobs asserts that punitive damages are penal in nature and serve the same functions as criminal punishment. Jacobs argues that because none of the procedural safeguards afforded to criminal defendants are afforded to punitive damages defendants,[4] punitive damages defendants are discriminated against in relation to criminal defendants.

■ The action of state courts and of judicial officers in their official capacities is action of the state within the meaning of the Fourteenth Amendment. *Shelley v. Kraemer,* 334 U.S. 1, 14, 15, 18, 68 S.Ct. 836, 842, 843, 844, 92 L.Ed. 1161 (1948). The action of state courts in enforcing a substantive common-law rule formulated by those courts may result in the denial of rights guaranteed by the Fourteenth Amendment, even though the judicial proceedings may have been in complete accord with the most rigorous conceptions of procedural due process. *Shelley,* 334 U.S. at 17, 68 S.Ct. at 844.

---

**4.** Jacobs does not specify which procedural protections, being absent, require a finding of un-

constitutionality.

■ Generally, the constitutional standard under the Equal Protection Clause is whether the challenged state action rationally furthers a legitimate state purpose or interest. *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 55, 93 S.Ct. 1278, 1308, 36 L.Ed.2d 16 (1973). State action is subjected to a higher level of scrutiny only if the classification interferes with the exercise of a fundamental right, *e.g.,* the right of privacy, *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); the right to vote, *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); the right of interstate travel, *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); rights guaranteed by the First Amendment, *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); or the right to procreate, *Skinner v. State of Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), or operates to the peculiar disadvantage of a suspect class, *e.g.,* alienage, *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); race, *McLaughlin v. State of Florida,* 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); or ancestry, *Oyama v. California,* 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249 (1948).

■ Defendants against whom punitive damages are sought do not constitute a suspect class. No fundamental rights of the type discussed in the decisions in this area are implicated by the imposition of punitive damages. Thus, "rational basis" is the appropriate constitutional standard to be applied here. *San Antonio,* 411 U.S. at 55, 93 S.Ct. at 1308.

Punishment and deterrence of outrageous conduct inspired by an evil motive or reckless indifference to the rights of others are legitimate state interests, and the imposition of punitive damages rationally furthers these interests.

As the predicate for Jacobs' second argument, Jacobs asserts that recovery of additional damages in some categories of civil cases, such as antitrust, is limited to a *multiple* of compensatory damages, whereas the recovery of punitive damages awards in other categories of civil cases is *unlimited.* Therefore, Jacobs argues that defendants against whom punitive damages are sought in the latter cases are discriminated against as compared to "additional damages" defendants in the former cases. Jacobs asserts that there is no rational basis for such discrimination.

Again, defendants against whom punitive damages are sought do not constitute a suspect class and no fundamental rights are implicated by the imposition of punitive damages.

On the record presented, I cannot say that the state's purposes in allowing punitive damages to be assessed are not rationally furthered by Missouri's decision not to place a cap on punitive damage awards. Any cap might prevent the purposes of punitive damages from being realized when the defendant is wealthy. A mandatory multiplier might be ineffectual when the other damages are nominal. Missouri's failure to put a cap on the amount of punitive damages that may be awarded by a jury rationally furthers the interests of punishment and deterrence.

Jacobs' equal protection challenge is meritless.

### G. *Conclusion*

Jacobs' motions for directed verdict and judgment notwithstanding the verdict on Brown's claim for fraudulent misrepresentation will be granted because Brown failed to present evidence sufficient to support each element of the claim. Jacobs' motions for directed verdict and judgment notwithstanding the verdict on Brown's claim for negligent misrepresentation will be granted because no cause of action exists for negligent misrepresentation of future intent. Assuming that a cause of action for negligent misrepresentation of future intent exists, Brown failed to present evidence sufficient to support each element of the claim.

Even if Brown had presented evidence sufficient to support a claim of fraudulent misrepresentation and/or a claim for negligent misrepresentation of future intent existed and was supported, 1) the jury's award of lost future profits will be vacated because no reasonable jury could find on

the basis of the evidence presented that the claimed lost profits were proximately caused by any of Jacobs' alleged misrepresentations; 2) the jury's award of punitive damages will be vacated because Instruction 15 did not properly inform the jury about Missouri's standards for determining the amount of punitive damages; and 3) the jury's award of punitive damages will be vacated because no reasonable jury could conclude that plaintiff's conduct was either outrageous or so reckless as to permit the inference of an evil motive.

## II. MOTION FOR NEW TRIAL

Jacobs has moved for a new trial as an alternative to its motion for judgment notwithstanding the verdict. Having granted Jacobs' Motion for Judgment Notwithstanding the Verdict, it is unnecessary to rule on Jacobs' Motion for a New Trial. However, in order to facilitate complete review on appeal, I will rule on the new trial motion.

### A. *Standard of Review*

A new trial may be granted if there is not substantial evidence to support the verdict. A new trial should be granted to prevent a miscarriage of justice. *California & Hawaiian Sugar*, 602 F.Supp. at 186.

The burden of proving harmful errors is on the party seeking the new trial. *Fireman's Fund Ins. Co. v. Aalco Wrecking Co., Inc.*, 466 F.2d 179 (8th Cir.1972), *cert. denied*, 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973). In considering a motion for a new trial, the evidence need not be viewed in the light most favorable to a nonmoving party. *Bates v. Hensley*, 414 F.2d 1006, 1011 (8th Cir.1969). In order to grant a new trial, I must conclude that the jury reached a seriously erroneous result. *Blake v. J.C. Penney Co.*, 894 F.2d 274, 281 (8th Cir.1990).

Although I have discretion to grant a new trial based upon my assessment of the evidence, I "cannot usurp the functions of the jury. The district court can only disturb a jury verdict to prevent a miscarriage of justice. The verdict must be against the 'clear weight,' 'overwhelming weight,' or

'great weight' of the evidence for a new trial to be granted." *Beckman v. Mayo Foundation*, 804 F.2d 435, 439 (8th Cir. 1986).

Jacobs asserts four grounds for a new trial: 1) the jury's verdict for actual and punitive damages was without any evidentiary basis, 2) the jury's verdict was erroneously inconsistent, 3) the jury's findings set forth in special interrogatories were without evidentiary basis, and 4) the Court erroneously allowed Brown's waived claim for monetary losses for the Southern Region to go to the jury. With the exception of the initial Suggestions in Support of Jacobs' motion, the parties discussed the issues raised by the new trial motion (if they were discussed at all) along with the issues raised by the Motion for Judgment Notwithstanding the Verdict. Similarly, my analysis of the issues raised by the Motion for Judgment Notwithstanding the Verdict reliably predicts the outcome of the new trial motion even under the different standard.

### B. *Punitive Damages Verdict Lacked Evidentiary Basis*

Jacobs contends that the jury's verdict for actual and punitive damages was without any evidentiary basis and, therefore, was rendered because of bias or prejudice and/or because of the jury's failure to follow the court's instructions. For all of the reasons previously discussed, there was not substantial evidence supporting the award of punitive damages.

### C. *The Verdict was Erroneously Inconsistent*

Jacobs contends that the jury's verdict was erroneously inconsistent in that representation "c" in Instructions 12 and 13 (referred to in this opinion as the third alleged misrepresentation) was found to be both a fraudulent and negligent misrepresentation. Jacobs argues that this demonstrates that the jury was biased or prejudiced and/or that it failed to follow the court's instructions.

Any single representation cannot be both fraudulent and negligent because

of the difference between the scienter element of these distinct legal theories. "[T]he theories underlying fraud and negligence are antithetical. An act or failure to act cannot be both intentional and unintentional." *Robertson Oil Co., Inc. v. Phillips Petroleum Co.,* 871 F.2d 1368, 1374 (8th Cir.1989); *see also, Restatement (Second) of Torts,* § 528 (1977).

■ Special answers or findings by the jury must be consistent with each other, and if they are irreconcilably inconsistent, they destroy each other.[5] *Robertson,* 871 F.2d at 1373. In this situation, both the negligence and the fraud verdicts must be vacated and the issues re-tried. *Id.* at 1375.

■ Here, because the jury found the third alleged misrepresentation to be both fraudulent and negligent, Jacobs is entitled to a new trial on that representation.

### D. *Jury's Findings as to Brinkerhoff and Kennedy Lacked Evidentiary Basis*

■ Jacobs contends that the jury's findings set forth in the Court's special interrogatories submitted as Instructions 22 and 23, which identified P. Brinkerhoff and E. Kennedy as Jacobs' employees who satisfied paragraph Third and Fourth of Instructions 12 and 13, respectively, were without evidentiary basis. Therefore, Jacobs argues that the jury's verdict was rendered because of bias or prejudice and/or because of the jury's failure to follow the Court's instructions.

Defendant points to no specific evidence about Brinkerhoff or Kennedy that would support the jury's conclusion. Defendant argues that the jury's conclusion was supported by the position each held with Jacobs.

Although I do not have a transcript of the proceedings, my notes and recollection of the evidence support Jacobs' conclusion that there was no evidence from which a reasonable jury could conclude that the evidence about Brinkerhoff and Kennedy sat-

isfied paragraphs Third and Fourth of Instructions 12 and 13. Neither Brinkerhoff nor Kennedy's position with Jacobs by itself provides a sufficient evidentiary basis for the jury's conclusion.

Jacobs does not challenge the adequacy of the evidentiary basis for the jury's conclusion about the other men listed by the jury in response to Instructions 22 and 23. However, the jury's inclusion of Brinkerhoff and Kennedy in its responses to these Special Interrogatories is another indication that the jury was not following instructions but was proceeding by emotion. When asked to respond to Instructions 22 and 23, the jury may well have listed all the names of Jacobs' employees which they could remember. Although this ground by itself would not warrant a new trial, it supports the grant of a new trial based on other grounds.

### E. *Brown Did Not Waive Claim For Southern Region Losses*

Jacobs contends that counsel for Brown waived in his opening statement any claim by Brown for damages for alleged monetary losses in the southern region. Therefore, Jacobs argues that there was no lawful evidence supporting the jury's award of such damages.

For the reasons already discussed in this order, it was not error to submit this claim to the jury and there was substantial evidence to support the jury's decision.

### F. *Conclusion*

For all of the reasons set forth in this opinion, the jury reached a seriously erroneous result in this case under the evidence presented to it. Emotion rather than reason appears to have directed this jury. In fact, defendant's case on its counterclaim appeared to be based to a large extent on appeals to emotion as a means of avoiding the terms of written agreements. Repetition of concepts like small company versus big company, local company versus foreign company and "boilerplate" distracted the jury from a rational consideration of the

---

**5.** In *Robertson,* as here, the jury was not instructed that it could return a verdict on only

one of the two theories. *See Robertson,* 871 F.2d at 1375.

evidence and from a careful application of the law as stated in the instructions.

## III. ORDER

For the foregoing reasons, it is OR-DERED that:

1) Jacobs' Motion for a Directed Verdict and for Judgment Notwithstanding the Verdict on Defendant's Counterclaim for Fraud and Negligent Misrepresentation is granted; and

2) in the alternative, Jacobs' Motion for New Trial is granted.