Cindy VAUGHN, Respondent/Cross–Appellant,

v.

NORTH AMERICAN SYSTEMS, INC., Appellant/Cross–Respondent.

No. 76056.

Supreme Court of Missouri, En Banc.

Jan. 25, 1994.

Rehearing Denied Feb. 22, 1994.

---

Edward M. Roth, Anthony S. Bruning, St. Louis, for respondent/cross-appellant.

Thomas C. Walsh, Dennis E. O'Connell, Jerome J. Duff, Thomas R. McDonnell, St. Louis, for appellant/cross-respondent.

PRICE, Judge.

Cindy Vaughn brought a products liability action against North American Systems, Inc. Vaughn claimed that a Mr. Coffeemaker manufactured by North American started a fire in her home resulting in approximately $15,000 property damage. The trial court granted North American's motion for directed verdict on Vaughn's claim for punitive damages. Vaughn's claim for actual damages was submitted to a jury and a verdict for $15,000 was returned in her favor.

The sole issue presented for our consideration is whether Vaughn made a submissible case for punitive damages. We find that she failed to establish causation from the evidence introduced to support punitive damages and affirm the judgment of the trial court.

## I.

On May 16, 1986, Vaughn had the day off from work. She turned on her coffeemaker, poured vinegar in it to clean it and went upstairs to take a shower, leaving the coffeemaker on and plugged in. Vaughn's coffeemaker contained instructions that it should be unplugged when not in use. Vaughn's cofffeemaker also contained an electric clock that would only work if the coffeemaker was plugged in.

Cindy Vaughn stepped out of her shower to a smoky bathroom and to the high-pitched sounding of a smoke alarm. She traced the smoke down the stairway to her kitchen, where she witnessed "flames shooting out of the top of the Mr. Coffee."

Vaughn argues that the following evidence introduced at trial entitled her to submit the issue of punitive damages to the jury. Automatic drip coffeemakers have been in use in the United States since the early 1970's. In response to safety concerns, coffeemaker manufacturers established an International Conference for Coffeemakers (IACFC). In the late 1970's and early 1980's, the IACFC commenced an "Unplug It" campaign. The campaign called on consumers to unplug their automatic drip coffeemakers when not in use or not attended to reduce fire hazards.

In November 1983, the United States Consumer Products Safety Commission issued a report entitled "Hazard Incidents Involving Automatic Drip Coffeemakers". The report stated that there were an estimated 2,720 residential fires caused by the automatic drip coffeemakers in 1982 and numerous additional incidents "involving overheating, melting, smoking, arching, leaking or electric shock". North American was provided a copy of the report and attended an industry meeting where it was discussed. The trial court refused admission of a portion of the Consumer Products Safety report that stated:

> Non-programmable clock timers (i.e., analog) have been in existence for several years on ADCs. With the recent introduction of programmable timers on ADCs, automatic timers are becoming a more common feature. With their use, the likelihood decreases that someone will be "onsite" if a malfunction occurs. With no one alert to take action to unplug the ADC or douse the fire, the potential for increasing deaths and injuries and damage is of concern. It is also difficult to reconcile the logic of marketing these features, which encourage continuous connection to the branch circuit with the industry "Un-plug It" campaign which encourages people to unplug the product when not in use.

## II.

We need not consider the trial court's evidentiary ruling on this matter. Neither do

we need address whether this evidence would support a submission for punitive damages if Vaughn had left her coffeemaker in the "off" position but plugged in.[1] Common sense would recognize that an argument could be made that the incorporation of an electric clock in an appliance that was to be unplugged after use might constitute a trap to the unwary. Although the appliance would be switched "off", it would also be left plugged in so the clock would continue to run and not require resetting with each use. Even if this were so, Vaughn did not fall victim to the trap. Vaughn did not leave the coffeemaker switched "off" and plugged in. Vaughn, instead, left the coffeemaker switched "on" while cleaning it with vinegar.[2]

The fact that this coffeemaker was equipped with an electric clock is irrelevant to the occurrence of this fire. It could have no causal relationship in fact because Vaughn cleaned her coffeemaker, which was equipped with an electric clock, in the same manner as she would have cleaned a coffeemaker not equipped with an electric clock, plugged in and switched "on". A loss that occurred while the coffeemaker was in use cannot be said to have been caused by an electric clock that required the coffeemaker to remain plugged in when not in use.

### III.

The law has always required that a plaintiff's damages must be the direct result of the wrongful acts alleged. Otherwise, a plaintiff could rove through all of a defendant's conduct that might justify punishment, but that caused plaintiff no injury. If this were the case, our system of tort law would be chaos. This requirement is the same whether the damages sought are compensatory or exemplary. One of the early cases speaking to this requirement simply stated:

It is too clear for doubt that no individual can become entitled to recover damages, actual or exemplary, from a railway company for any act or omission, however negligent or reprehensible unless from it he receives injury.

*Missouri Pac. Ry. Co. v. Shuford,* 72 Tex. 165, 10 S.W. 408, 411 (1888).

In 25 C.J.S. *Damages* # 117(1) concerning exemplary damages, it is stated:

*Proximate and Natural Consequence.* The injury complained of must have been the consequence of the defendant's act, and the natural and proximate result thereof. Thus, although a defendant has been grossly negligent, it must be shown that the injury and damage complained of resulted therefrom, or there can be no recovery. . . . (footnotes omitted)

This Court referred to this issue in *State v. Shain,* 341 Mo. 733, 108 S.W.2d 351, 356 (1937). Quoting from 33 A.L.R. p. 398, it stated:

. . . the general doctrine is that the punitive damages awarded must bear some relation to the injury inflicted and the cause thereof, though they need not bear any relation to the damages allowed by way of compensation.

More recently, Judge Bartlett noted in *Jacobs Mfg. Co. v. Sam Brown Co.,* 792 F.Supp. 1520, 1534 (W.D.Mo.1992), that:

Punitive damages are awarded in Missouri for the purpose of punishing the wrongdoing defendant and also for the purpose of deterring defendant and others from similar wrongful conduct in the future. In addition punitive damages must have some reasonable relation to the injury inflicted and the cause thereof (citations omitted).

This Court has recently held that satisfaction of the "but for" test is an absolute minimum for causation. *Callahan v. Cardinal Glennon Hospital,* 863 S.W.2d 852 (Mo. banc 1993). This is so because satisfaction of the "but for" test merely establishes cause in fact. Plaintiff's punitive damages claim fails

---

1. We do not reach the issue raised by Judge Holstein in his concurring opinion in *Kansas City v. Keene Corp.,* 855 S.W.2d 360 (Mo. banc 1993).

2. Plaintiff submitted expert testimony at trial indicating that the operational effect of the on-off switch made no difference regarding the risk of

fire. While that evidence may have bearing on the issue of defect, it does not assist plaintiff regarding her claim for punitive damages. Her claim for punitive damages was based upon the incorporation into the product of the electric clock.

to satisfy the bare minimum "but for" test of causation. The judgment of the trial court is affirmed.

All concur.